**Arthur S. ADAMS and Gertrude H. Adams**

**v.**

**Ronald E. ALLEY and Erna E. Alley.**

Supreme Judicial Court of Maine.

July 31, 1973.

Blaisdell & Blaisdell by Malcolm S. Stevenson, Ellsworth, for plaintiffs.

Libhart & Ferris by Wayne P. Libhart, Brewer, for defendants.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

WEATHERBEE, Justice.

This appeal concerns an attempted conversion of the findings and recommendations of a Referee into an enforceable judgment and presents several procedural issues not heretofore directly encountered since the adoption of our Maine Rules of Civil Procedure.

Plaintiffs, husband and wife, brought this action concerning title to real property in the Town of Lamoine (the Dunphy lot) against the Defendants, husband and wife. The substance of Plaintiffs' claims is:

Count 1. Plaintiffs asserted that they had a record title to the property superior to that of Defendants' predecessor in title, one Dunphy, and asked that the Court determine that title is vested in them, the Plaintiffs, and allow them damages.[1]

Count 2. Plaintiffs allege that upon learning of the conflict in title to their property revealed by the delayed recording of Dunphy's deed, Mr. Adams sought through Mr. Alley to purchase for the Plaintiffs whatever title Dunphy had but that Mr. Alley violated his agreement and trust by taking from Dunphy a deed of the property to himself and Mrs. Alley. Plaintiffs asked for damages of $5,000.00 but no equitable type of relief.

By agreement, the matter was ordered heard by a Referee. M.R.C.P., Rule 53. The Referee heard the matter and filed his report. He found as to Count 1 that Plaintiffs had not acquired title to the Dunphy lot by the 1960 deed from Smith. As to Count 2, however, he found that Plaintiffs had established the existence of a trust for their benefit in the property which the Defendants had acquired by deed from Dunphy. He found that:

" . . . the plaintiffs should have judgment that the defendants convey

---

1. The Plaintiffs allege that Grace L. Smith conveyed this property to Allston E. Smith in 1958, that Allston E. Smith conveyed it to Mr. Adams, the Plaintiff, in 1960 but that Grace L. Smith had earlier conveyed the same premises to Dunphy in 1948 by a deed which was not recorded until 1962.

whatever legal interest they have acquired in the Dunphy lot with covenants against claims arising by, through or under them to the plaintiffs on payment of $1,500.00 by the plaintiffs within thirty (30) days of judgment."

He added:

"I recognize that amendments to the pleadings may be required to permit the judgment if approved."

The Report of the Referee was filed in the office of the Clerk of Courts August 26, 1971 and the Clerk so notified counsel that day. No objection to the acceptance of the Report of the Referee was filed and on September 29, 1971, without further notice to the parties, the Report was accepted.

Although the docket entries do not show any judgment by the Court they do contain an entry: "Sept. 30, 1971: Notice of judgment sent attorneys of record". We are confident that the "judgment" was really the acceptance of the Report of the Referee which had been filed the previous day.

No appeal was taken by the Defendants[2] and on February 8, 1972 the Plaintiffs brought a "Complaint to Enforce Judgment". M.R.C.P., Rule 70. The complaint alleges the finding of the Referee quoted above and that the Report of the Referee was accepted. It is significant that this complaint does not recite any judgment of the Court but, rather, alleges the language of the recommendations of the Referee.

New counsel then appeared for the Defendants and filed an answer and affirmative defenses but they have not been included in the record on appeal.

Another Justice of the Superior Court acted upon this "Complaint to Enforce a Judgment" and found that certain disputed conduct of Mr. Adams constituted a tender. He ordered an execution and delivery of the deed on substantially the same terms recommended by the Referee. The Justice's "Decision on Complaint to Enforce Judgment" also recites the Referee's language but is silent as to the issuance of any previous judgment. We assume that there was no such previous judgment.

The Defendants appealed from this order and now raise several issues, only three of which will be necessary for us to discuss.

*The Defendants' attacks on Plaintiffs' "judgment"*

■ First, the Defendants urge us that the Court erred in "adopting" the Report of the Referee because it was contrary to the facts and law. We understand this point to relate to the "acceptance" of the Report by the Justice in the Superior Court on September 29, 1971. In their brief Defendants urge us with more specificity that the existence of a fiduciary relationship between Mr. Adams and Mr. Alley was not proved.

The Justice in the Superior Court was required to accept the findings of fact of the Referee unless they were clearly erroneous. M.R.C.P., Rule 53(e)(2)(i).[3] As the transcript of the hearing before the Referee was not made part of the record

---

2. Indeed, no appeal *could* have been taken until there had been a judgment. Appeals lie only from judgments (M.R.C.P., Rule 73(a)) except for interlocutory appeals ordered by the Court (M.R.C.P., Rule 72(c)).

3. M.R.C.P., Rule 53(e):
   "(2) In Non-Jury Actions. (i) In an action where there has been a reference by agreement, the referee's conclusions of law and findings of fact shall be conclusive unless the order of reference reserves to the parties the right to object to acceptance of the referee's report. If such right is so reserved, the court shall accept the referee's findings of fact unless clearly erroneous. (ii) In any other non-jury action the court shall accept the referee's findings of fact unless clearly erroneous. (iii) Except where the reference is by agreement without reservation of the right to object, any party may within 10 days after being served with notice of the filing of the report,

on appeal we would not be able to evaluate the merit of this issue, even if it was properly before us, which it is not.

■ Secondly, the Defendants argue to us that as the parties had agreed to reserve their rights to object to the Report of the Referee, the Defendants were by rule entitled to notice and hearing on Plaintiffs' motion to accept it. Although this area of disagreement is not reserved in Defendants' Statement of Points on Appeal we believe some benefit may result from a brief discussion of it.

Even when the right to object to the Report has been reserved, Rule 53(e)(2)(iii) places upon the party who wishes to object the duty, within 10 days after being served with notice of the filing of the Report, to serve written objections upon the other party. If no such written objections have been served the party desiring the acceptance is entitled to have the Report presented to the Court for acceptance without notice to the other parties.

As no such written objections to the acceptance of the Report of the Referee had been served by the Defendants, Defendants were not entitled to notice or hearing on the acceptance of the Report.

■ The Defendants' third point on appeal, as restated more specifically in the Defendants' brief, asserts that there was no judgment by the Court imposing the order which the Referee suggested. We agree with the Defendants' position as to this issue. The Referee's conclusion that "the Plaintiffs should have judgment that the Defendants convey whatever interest they acquired . . ." was only the Referee's recommendation. It could have no mandatory force against the Defendants, even after the acceptance of the Re-

port, until it had been adopted by the Court—if the Court saw fit to choose that method of palliating the wrong the Referee found was done to the Defendant—and incorporated into a judgment. This has never been done. While the Justice who acted upon Plaintiffs' Complaint to Enforce Judgment made an order in substantially the same language used in the Referee's recommendation, he purported only to act on a judgment supposedly already made by another Justice.

The crucial step—that is, the issuance of a judgment culminating Plaintiffs' original action, the Referee's findings of fact and law and his recommendations—has never been made.

*The procedure authorized by M.R.C.P., Rule 70*

■ While it is already apparent that the judgment in the Plaintiffs' favor cannot be sustained, the precise disposition to be applied to the Defendants' successful appeal depends upon the true nature of the process used by the Plaintiffs to obtain the enforcement of what they had supposed was a valid judgment. If the procedure authorized under M.R.C.P., Rule 70 is a new and separate action, then the Plaintiffs are not entitled to the relief sought under it and Defendants' appeal must be sustained. If it is only a subsequent step in the original action then the Defendants' appeal must be dismissed as premature as there has as yet been no judgment in that action. This is our first opportunity to consider this question.

M.R.C.P., Rule 70 reads:

"Rule 70. Judgment for Specific Acts

If a judgment directs a party to execute a conveyance of land or to deliver

---

serve written objections thereto upon the other parties. Application to the court for action upon the report and upon objections thereto shall be by motion and upon notice as prescribed in Rule 6(d). Except as otherwise pro-

vided in this paragraph (2), the court after hearing may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions."

deeds or other documents or to perform any other specific act and the party fails to comply within the time specified, the court may direct the act to be done at the cost of the disobedient party by some other person appointed by the court and the act when so done has like effect as if done by the party, except that the appointee of the court shall have no authority to execute a conveyance of land located outside the State of Maine. The court may also in proper cases adjudge the party in contempt."

The rule restates the inherent power of a court to enforce its own decrees and provides for performance by a substitute in the event of disobedience of the defendant. Du Puy v. Standard Mineral Co., 88 Me. 202, 33 A. 976 (1895); 2 Field, McKusick & Wroth, Maine Civil Practice, §§ 70.1, 70.2 (2nd Ed. 1970); 49 C.J.S. Judgments § 585.

Before our adoption of the Maine Rules of Civil Procedure contempt proceedings to enforce judgments in equity have been considered to be independent actions, separate from the original suit. Cheney v. Richards, 130 Me. 288, 155 A. 642 (1931); 49 C.J.S. Judgments § 587. The enforcement of judgments at law by execution were considered final judicial processes in the original action. Skolfield v. Skolfield, 90 Me. 571, 38 A. 530 (1897); 49 C.J.S. Judgments § 586(a).[4]

We find very little precedent as to this issue. The question of whether the enforcement of a judgment is a new and separate action or a subsequent step in the original action was thoroughly considered by the California Court in studying the effect of a statute which permitted, by leave of court, the enforcement of a judgment on motion and notice to the judgment debtor or after the lapse of the Statute of Limitations. The Court held that the motion to enforce the judgment at law was neither an "action" nor a "special proceeding of a civil nature" and said that

"    . . .  It is a mere subsequent step in an action or special proceeding already commenced, which is governed entirely, so far as the time within which the same may be taken is concerned, by the provisions of the statute specially relating thereto. . . ." Doehla v. Phillips, 151 Cal. 488, 91 P. 330, 332 (1907).

We agree with this conclusion. Our Rule 70 was promulgated simultaneously with our merger of law and equity and the necessity of maintaining a distinction based upon the type of relief which is sought to be enforced is no longer evident. We feel, as did the California Court, that proceedings to enforce judgments are more logically considered to be final steps in the original actions.

Although the Plaintiffs labelled their request for the Court's assistance in enforcement of the Court's order a "Complaint to Enforce Judgment" it should more properly have been docketed as a "Motion to Enforce a Judgment" and we consider it to have been such. This, however, is academic here as the motion was premature and no valid action was taken by the second Justice on the motion. The Defendants' appeal is therefore also premature.

The entry must be:

Appeal dismissed. Remanded to Superior Court for determination of what, if any, judgment (with or without amendment of pleadings) should be entered and for further action consistent with this opinion.

All Justices concurring.

---

4. It appears from the record that the Clerk of Courts followed the usual practice of docketing the "Complaint to Enforce Judgment" as part of the original action.