1998 ME 206

Craig LINSCOTT

v.

James FOY et al.

Supreme Judicial Court of Maine.

Argued June 8, 1998.
Decided Aug. 11, 1998.

Sidney St. F. Thaxter, II (orally) John D. Gleason, Susan C. Steiner, Curtis Thaxter Stevens Broder & Micoleau, L.L.C., Portland, for plaintiff.

R. David DePuy (orally), Andrea L. Marston, McLane, Graf, Raulerson & Middleton, P.A., Manchester, NH, Jeffrey J. Clark, Gregory J. Orso, Erwin, Ott, Clark & Campbell, York, for defendants.

Kaighn Smith, Jr. (orally), Jerrol Crouter, Drummond, Woodsum & MacMahon, Portland, for receiver.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, and SAUFLEY, JJ.

SAUFLEY, Justice.

[¶ 1] This is James Foy's fourth appeal to this Court in connection with the litigation between him, Craig Linscott, and their related corporations, SMA Insurance Agency, Inc. and Berwick Insurance, Inc. Foy appeals from two post-judgment orders entered in the Superior Court (York County, *Perkins, A.R.J.*) in favor of Craig Linscott, contending, inter alia, that the court exceeded the bounds of its discretion when it enforced an order of specific performance and imposed sanctions on Foy. We find no error in the order of enforcement or the imposition of certain sanctions. However, because the record does not reveal the basis for certain other sanctions imposed by the court, we affirm in part and vacate in part.

### I. Background

[¶ 2] Prior to 1989, Foy was the sole shareholder of SMA and Linscott was the manager of the corporation.[1] In January 1989, Linscott filed an action against Foy and SMA for breach of Foy's alleged agreement to transfer 50% of the SMA stock to Linscott. During the pendency of that action, Berwick Insurance, Inc. (Berwick), a corporation controlled by Foy, filed an action against Linscott for alleged breaches of fiduciary duty. The court appointed a receiver pendente lite to manage the business and affairs of SMA.

[¶ 3] In April 1993, Linscott and Foy entered into a global settlement agreement, whereby Linscott agreed to transfer $800,000 and his Berwick stock to Foy in exchange for Foy's SMA stock. The agreement required Linscott and SMA to deliver general releases of "any and all claims" against Foy and Berwick. Similarly, Foy and Berwick were required to execute general releases in favor of Linscott and SMA.[2] The agreement also required Foy, Linscott, SMA, and Berwick to execute stipulations of dismissal for filing in Linscott's action and in Berwick's action.

[¶ 4] When Foy failed to close the transaction in accordance with the terms of the agreement, Linscott amended his original complaint by adding a count seeking specific performance. Following a four-day bench trial on the specific performance count, the court found that Foy had failed to comply with the terms of the agreement, entered a judgment in favor of Linscott on the specific performance count, and directed Foy to close the transaction in accordance with the terms of the agreement within fourteen business days of the date of final judgment. Foy appealed, and we affirmed the judgment in a memorandum of decision.

[¶ 5] Foy did not comply with the specific performance judgment. Instead, shortly after our affirmance of that judgment, he filed an action in United States District Court for

---

1. Some of the factual background is described in greater detail in *Berwick Ins., Inc. v. Linscott*, 684 A.2d 795 (Me.1996).

2. Other provisions of the settlement agreement are not relevant to the issues presented by this appeal.

the District of New Hampshire against SMA and the receiver, both individually and in his capacity as receiver, regarding SMA's income.[3] The Superior Court authorized the receiver to retain counsel, and ordered that Foy and Linscott share the receiver's attorney fees equally. Despite this order, Linscott alone advanced the funds for the attorney fees incurred by the receiver.

[¶ 6] On the heels of the action in federal court, Berwick filed another complaint against the receiver and SMA in the Hillsborough County, New Hampshire Superior Court seeking damages for unpaid funds and an accounting of SMA's finances. On the same day, Berwick commenced an action against Linscott in Superior Court (York County) seeking a declaration that Berwick was not bound by the Linscott–Foy agreement. Although Berwick's request for a voluntary nonsuit was granted in November 1996, SMA and the receiver each retained counsel to defend against the action in New Hampshire state court.

[¶ 7] Because Foy continued to resist closing, Linscott moved, pursuant to M.R. Civ. P. 70, for an order in the original specific performance proceeding directing the receiver to transfer SMA's assets and liabilities to Linscott. The court granted Linscott's motion, and, on June 14, 1995, ordered the receiver to transfer SMA's assets and liabilities (except for its tax liability) to Linscott's new corporation, to dissolve SMA, and to file the corporation's final tax return. The order also provided that "[w]hen and if Foy signs all documents contemplated by the Settlement Agreement and otherwise cooperates with Linscott in obtaining financing such that Linscott is able to obtain financing, Linscott shall pay in escrow to the court or to receiver as escrow agent the purchase price of $800,-000." Subsequently, the receiver transferred all of SMA's assets and liabilities, except its tax liabilities, to Linscott's new corporation. Foy remained the sole shareholder of SMA, but declined to execute the documents contemplated by the agreement.

[¶ 8] During 1996, all other outstanding litigation between the parties was resolved in Linscott's favor. In January 1996, the court entered a summary judgment in favor of Linscott in Berwick's declaratory judgment action on the ground that the judgment in Linscott's action operated as res judicata. Citing this summary judgment and the terms of the agreement, the court also dismissed Berwick's separate action against Linscott. We affirmed both judgments. *See Berwick Ins., Inc. v. Linscott*, 684 A.2d 795 (Me.1996).

[¶ 9] In September 1997, Linscott filed a supplemental petition for attorney fees in the original proceeding, requesting either that: (1) the entire purchase price under the settlement agreement be abated, with Linscott bearing the responsibility for the fees and expenses of SMA and the receiver, as well as any taxes owed by SMA; or (2) that all fees and expenses incurred by the receiver and SMA and advanced by Linscott, as well as the attorney fees incurred by Linscott, be assessed against Foy or ordered paid by SMA via a credit against the $800,000 price.[4] In October 1997, the receiver filed a consolidated report and a proposed accounting. According to the report, the receiver had incurred fees and costs totalling $182,160.79 in defending against the actions filed by Foy, fees and costs that "would not have been incurred had [Foy] complied with the terms of the settlement agreement."[5]

[¶ 10] After hearing, the court issued an order on November 28, 1997 abating the $800,000 purchase price in its entirety, directing Linscott to bear his own attorney

---

**3.** Specifically, the complaint alleged that, between 1992 and 1995, the receiver issued Schedule K–1 forms to Foy, but refused to distribute any of the SMA income to him despite several requests. As amended, the complaint sought an order declaring that the SMA income was Foy's, or, alternatively, directing the receiver to rescind the K–1 forms and issue new ones to Linscott.

**4.** Linscott sought reimbursement only for the attorney fees incurred by him after the affir-

mance of the specific performance judgment in February 1995. The petition did not seek reimbursement for attorney fees incurred by Linscott between the execution of the settlement agreement and our affirmance of the specific performance judgment in February 1995.

**5.** After reviewing its records, the receiver reduced its request for fees and costs from $182,-160.79 to $162,677.08.

fees and costs along with those of the receiver and SMA, and requiring Linscott to deposit $360,000 into an escrow account to cover any state or federal tax liability of SMA.[6] Pursuant to the order, any portion of the escrowed $360,000 not applied to discharge SMA's tax obligations was to be disbursed to Linscott. Because no tax liability was ultimately assessed against SMA, the $360,000 in the escrow account together with accrued interest, less the 5% fee imposed by 4 M.R.S.A. § 556 (1989 & Supp.1997), has been released to Linscott.[7] The order provided that it was "without prejudice to the resolution of any dispute between [Linscott] and [Foy] about tax liability concerning or related to SMA." From the court's June 14, 1995, order and its November 28, 1997 order, Foy filed this appeal.

## II. Rule 70 and the Asset Transfer

■ [¶ 11] Foy first contends that the court exceeded the bounds of its discretion by ordering the receiver to transfer SMA's assets and liabilities to Linscott, when the judgment ordering specific performance of the settlement agreement referred to a stock transfer. Foy claims that the asset transfer was a significant deviation from the terms of the agreement, since it left him with the SMA stock and therefore the possible income tax liability for income that the receiver distributed to Linscott. We disagree.

[¶ 12] In pertinent part, Maine Rule of Civil Procedure 70 provides:

> If a judgment directs a party to ... perform any ... specific act and the party fails to comply within the time specified, the court may direct the act to be done at the cost of the disobedient party by some other person appointed by the court ....

M.R. Civ. P. 70 (emphasis added). Rule 70 "restates the inherent power of a court to enforce its own decrees and provides for performance by a substitute in the event of disobedience of the defendant." *Adams v. Alley*, 308 A.2d 568, 572 (Me.1973); *see also* 7 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 70.02 (2d ed. 1994) ("When a party has failed to comply with the terms of an agreement that settles litigation ... the court may exercise its inherent power to enforce the agreement pursuant to Rule 70."). In direct contravention of the trial court's judgment, Foy declined to transfer the stock and refused to close in accordance with the terms of the agreement. In response, the court entered an order that effectuated the near equivalent of a stock transfer but did not require Foy's cooperation to complete.[8]

[¶ 13] There is no merit in Foy's argument that the court should have chosen a different method of enforcement, namely appointment of a commissioner to transfer of the stock, when Foy could have accomplished that result himself. The simple and unavoidable fact is that Foy had the ability to transfer his SMA stock to Linscott at any time, but chose to ignore multiple court orders requiring him to do just that. Although the court had the authority to choose a different method of enforcing its order, the availability of another option does not compel the conclusion that the court exceeded its authority or exceeded the bounds of its discretion. In view of Foy's indefatigable recalcitrance against Linscott and the receiver, it was clear that he did not intend to comply with the court's order. On the facts before it, the trial court possessed the authority to order an asset transfer to enforce its specific performance judgment.

---

6. The court's November 28 order did not address Linscott's obligation to deliver his Berwick stock to Foy. We consider the trial court's order an attempt to bring this interminable dispute to a conclusion and to separate these litigants. Accordingly, we assume that the abatement of the entire purchase price included Linscott's obligation to transfer the stock. Because Foy has not challenged the court's failure to order Berwick stock, we do not reach the issue.

7. Although, as of the date of the oral argument in this matter, a portion of the escrow funds had

not been disbursed to Linscott, the parties have filed a supplement to the record indicating that the remaining funds have all been disbursed to Linscott.

8. If, for example, the court had ordered a stock transfer, Linscott would have become the sole shareholder of SMA and could have distributed the assets to himself in liquidation of the corporation. Apart from the claimed differences in the income tax treatment of the transaction, this is precisely the result accomplished by the court's Rule 70 order.

[¶ 14] We similarly find no merit in Foy's contention that the court's Rule 70 order effectively "shifted the tax burden on SMA profits paid to Linscott from Linscott to Foy." Uncertainty concerning federal income taxes, an issue not explicitly addressed by the terms of the settlement agreement or the specific performance judgment, does not provide Foy with justification for his wholesale refusal to comply with the court's order.[9] Moreover, his claim of unfairness rings hollow where he could have eliminated his concern about the continuing generation of tax liability by a simple transfer of the stock.

### III. Award of Attorney Fees and Expenses and Imposition of Sanction

[¶ 15] Foy next contends that the court's abatement of the entire purchase price for the SMA stock effectively charged him with Linscott's and the receiver's fees and expenses and imposed an additional $383,612.42 sanction on him.[10] Although the court's decision to sanction Foy through the abatement of the purchase price in the amount of the fees and costs incurred by Linscott was within its authority and did not constitute an abuse of discretion, we are unable to discern the reason for the abatement of the remainder of the purchase price.

### A. Award of Attorney Fees and Costs

[¶ 16] Whether the court was authorized to award attorney fees in these circumstances is a question of law. See *Gibson v. Farm Family Mut. Ins. Co.*, 673 A.2d 1350, 1354 (Me.1996). The court's authority to award attorney fees "may be determined by statute, by the 'American Rule' at common law that generally prohibits taxing the losing party in litigation with a successful opponent's attorney fees, or *by certain recognized common law authorizations of attorney fees.*" *See id.* (emphasis added). Although the prevailing party is not ordinarily entitled to an award of attorney fees, courts may award fees as damages for certain egregious conduct. See *Chadwick–BaRoss, Inc. v. T. Buck Constr., Inc.*, 627 A.2d 532, 536 (Me.1993). "[T]he trial court does possess inherent authority to sanction parties and attorneys for abuse of the litigation process." *Chiappetta v. LeBlond*, 544 A.2d 759, 760 (Me.1988) (*quoting Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31, 82 S.Ct. 1386, 1388–89, 8 L.Ed.2d 734 (1962)); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 46, 111 S.Ct. 2123, 2133, 115 L.Ed.2d 27 (1991) (stating that the federal district court has inherent power to impose attorney fees as a sanction when a party shows bad faith by hampering enforcement of a court order).

[¶ 17] Because of the strictures of the well-established "American Rule," courts should exercise the inherent authority to award attorney fees as a sanction only in the most extraordinary circumstances. As we cautioned in *Chiappetta*, the court's authority to sanction parties and attorneys for abuse of the litigation process "should be sparingly used and sanctions imposed only when the abuse of process by parties or counsel is clear." *Chiappetta*, 544 A.2d at 761. In other words, attorney fees may not be awarded as a sanction in the absence of significant bad faith on the part of a litigant or his agents.

[¶ 18] Foy's actions here were unquestionably egregious. He repeatedly refused to comply with a final order of the court. Instead of transferring the stock, executing the releases contemplated by the settlement agreement, and ending the expensive and time-consuming litigation that prompted the settlement, Foy filed multiple suits in several jurisdictions. Despite his protestations, these suits amounted to little more than collateral attacks on the order to close the settlement agreement. Even if aspects of the settlement were not fully addressed by the agreement, these lacunae did not justify an obstinate refusal to comply with a valid

---

9. As of the date of oral argument in this matter, the tax dispute was pending in the United States Tax Court.

10. Under the terms of the agreement, Linscott was obligated to transfer his Berwick stock and $800,000 to Foy. According to Foy, the abatement of this obligation effectively charged Foy with fees and expenses incurred by Linscott and the receiver totalling $416,387.58 and sanctioned Foy with the difference, $383.612.42.

order to close in accordance with the agreement. In short, we have no difficulty concluding that these actions were undertaken in bad faith and were abusive of the court and the other parties, thereby providing the court with authority to consider imposition of attorney fees.

■ [¶ 19] The next issue is whether the court exceeded its discretion by awarding the entire amount of the attorney fees and costs as a sanction. *See Gibson*, 673 A.2d at 1354. The court implicitly determined that an offset of the purchase price was necessary in view of the costs generated by Foy's refusal to close. Linscott not only advanced all of the funds for the receiver's defense of Foy's actions, but also incurred substantial fees and costs in defending himself against those actions. These fees and costs would not have been generated but for Foy's refusal to comply with the Rule 70 order. On this record, the trial court did not exceed the bounds of its discretion by awarding Linscott over $400,000 of fees and costs.[11]

### B. Monetary Sanction

■ [¶ 20] Finally, we turn to Foy's argument that the difference between the $800,000 purchase price and the fees and costs awarded to Linscott constituted an unreasonable and excessive sanction. The court could have imposed further sanctions only pursuant to specific authority. Conceivably, that authority might have been found in M.R. Civ. P 11 or pursuant to the court's inherent power to punish contempt.

[¶ 21] Unfortunately, the record does not reveal whether the court intended to invoke its authority to impose sanctions pursuant to M.R. Civ. P. 11. *Cf.* 2A JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 11.02[4] at

11–73 (2d ed.1994) (noting that, under F.R. Civ. P. 11, the trial court should articulate the justification for imposing sanctions "[a]s a general practice, and as an aid to appellate review."). Similarly, although the court has inherent power to impose sanctions for contempt, including failure to comply with a lawful judgment or order, M.R. Civ. P. 66 establishes specific procedures for exercising that authority. *See* M.R. Civ. P. 66(a)(1). Because the court did not invoke the procedures set forth in Rule 66, we can only assume that its order was not designed to punish Foy as a contemnor for his failure to comply with the Rule 70 order.

[¶ 22] Accordingly, we vacate the order to the extent that it sanctioned Foy by abating the purchase price beyond that necessary to compensate Linscott for his and the receiver's attorney fees and costs. The matter must be remanded for a determination of whether any of the funds from the escrow account should have been retained by Linscott. This determination will necessarily involve a determination of whether a further sanction against Foy is appropriate and, if so, in what amount.[12] Upon remand, the court may also consider whether to award additional attorney fees generated through the date of its next hearing.

The entry is:

Order dated June 14, 1995 affirmed. Order dated November 28, 1997 affirmed in part, vacated in part. Remanded for further proceedings consistent with this opinion.

---

11. We note that the court's November 28 order provides that "[a]ll future costs of the Receiver for legal and accounting fees to carry out the final disposition of any and all pending litigation and tax matters shall be borne, without recourse to any other person or entity, by Craig O. Linscott."

12. We find no merit in Foy's contention that he was deprived of a constitutionally protected interest without due process of law when the court ordered him to pay fees and costs without first holding an evidentiary hearing. Notwithstand-

ing the court's denial of Foy's motion for full hearing. Foy had notice that the receiver's report would be considered and ample opportunity to object to the receiver's fees, and yet did not express an objection. *Cf. Michaud v. Mutual Fire, Marine & Inland Ins. Co.*, 505 A.2d 786, 789–90 (Me.1986). Further, contrary to Foy's assertion, the court did not abuse its discretion by accepting a proposed accounting instead of a report of sale. *See* 13–A M.R.S.A. §§ 1116(3), 1117(1) (1981).