2011 ME 73

**STATE of Maine**

v.

**Robert ST. ONGE.**

Supreme Judicial Court of Maine.

Argued: May 11, 2011.
Decided: June 28, 2011.

---

John Paul DeGrinney, Esq. (orally), Peter J. Richard Jr., Esq., DeGrinney Law Offices, Portland, ME, for Robert St. Onge.

William J. Schneider, Attorney General, Leanne Robbin, Asst. Atty. Gen. (orally), Augusta, ME, for the State of Maine.

Panel: SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, GORMAN, and JABAR, JJ.

SILVER, J.

[¶ 1] Robert St. Onge appeals from a judgment of the Superior Court (York County, *Brodrick, J.*) imposing punitive sanctions for contempt after holding a jury-waived plenary proceeding pursuant to M.R. Civ. P. 66(c). St. Onge contends that (1) the court lacked subject matter

jurisdiction to hold proceedings for Class D criminal contempt; (2) the court violated his due process rights by excluding testimony related to his state of mind at the time he allegedly violated a court order; (3) the complaint was legally insufficient to establish personal jurisdiction; (4) the State should have been equitably estopped from prosecuting this matter because an attorney for the State allegedly misinformed a third party that conduct prohibited by the court order could be performed without penalty; and (5) St. Onge's waiver of a jury trial was not made knowingly, intelligently, and voluntarily. We modify the judgment and, as modified, we affirm.

## I. BACKGROUND

[¶ 2] Viewed in the light most favorable to the court's judgment, the record supports the following facts. *State v. Nadeau,* 2010 ME 71, ¶ 2, 1 A.3d 445, 450.

[¶ 3] Robert St. Onge, as president of Winterwood Acres, Inc., president of Beltie, Inc., and member of Winterwood Farm, LLC, (collectively, Winterwood) operated a composting facility at his farm in Lyman. The facility accepted solid waste and converted it into compost for sale.

[¶ 4] In August 2006, pursuant to M.R. Civ. P. 80K, the Department of Environmental Protection filed a land use complaint against Winterwood related to the discharge of pollutants from its composting operation into a nearby brook. In June 2007, the Department and St. Onge agreed to, and the District Court (Biddeford, *Brennan, J.*) later entered, a consent decree by which the court found that Winterwood had violated several statutory provisions. St. Onge agreed, among other things, to bring his operation into statutory and regulatory compliance. In May 2008, the court (*Janelle, J.*) entered a contempt order that required Winterwood to "immediately cease the unlicensed dis-

charge of pollutants [into] waters of the State."

[¶ 5] On September 28, 2009, on the Department's motion to enforce the May 2008 contempt order, the court ordered that "[Winterwood is] immediately prohibited from accepting or receiving any further solid waste or residual ... or any other material intended for composting."

[¶ 6] In October 2009, November 2009, and March 2010, four different waste companies delivered waste to Winterwood for composting. Three of the waste companies kept records of the deliveries that they made to "Winterwood" or "Winterwood Farms." Winterwood recorded deliveries made by the fourth company on invoices with the heading: "WINTERWOOD FARM COMPOST, Beltie, Inc."

[¶ 7] In April 2010, the State filed a criminal complaint and summons, charging St. Onge, as principal of Winterwood, with contempt. An amended summons cited the charge as "Class D, M.R. [Civ.] P. 66(c) Plenary Proceeding for Punitive Sanctions for violation of Order dated 9–28–09" and specified a time and place of a hearing. St. Onge, through counsel, returned service of the amended summons.

[¶ 8] After St. Onge waived his initial appearance and requested a jury trial, his case was transferred to the Superior Court. At trial in August 2010, the Superior Court explained that the case was "criminal contempt using the civil rules," and St. Onge, with counsel, signed a jury trial waiver form in open court. The court asked St. Onge if he understood that he had a right to a jury trial and if he had discussed this with his attorney. St. Onge replied, "It's not quite clear to me still." The court then explained to St. Onge that he had the right to have a jury of twelve people of the county in which he resided decide his case, or that the judge could decide his case instead. St. Onge agreed to proceed without a jury.

[¶ 9] At the bench trial, after the State rested, St. Onge made offers of proof related to two witnesses. The first proffer was that an attorney would testify that he had advised St. Onge that he could accept composting materials for his own agricultural purposes without violating the court order. The second proffer was that a waste supplier would testify that the attorney for the State, "sometime in April or May," told him that his company could still deliver waste to Winterwood. The court excluded the proffered evidence as not relevant to determining whether St. Onge (1) was aware of the court order, (2) was capable of observing it, and (3) intentionally accepted waste material at Winterwood.

[¶ 10] The court adjudicated St. Onge to be in contempt and sentenced him to six months in jail, with all but fifty days suspended, and one year's administrative release. The judgment and commitment form categorized the contempt as a Class D crime. St. Onge timely appealed.

## II. DISCUSSION

[¶ 11] We address St. Onge's first argument as two issues: (1) whether the court had subject matter jurisdiction, and (2) whether a punitive sanction for contempt is a Class D crime. We then address St. Onge's remaining contentions.

### A. Punitive Sanctions for Contempt

#### 1. Subject Matter Jurisdiction

[¶ 12] St. Onge contends that the court lacked jurisdiction to proceed in criminal court because his alleged contempt arose from a civil court order.

[¶ 13] "Whether a court has subject matter jurisdiction is a question of law that we review de novo." *Windham Land Trust v. Jeffords*, 2009 ME 29, ¶ 19, 967 A.2d 690, 696.

[¶ 14] A court has subject matter jurisdiction to consider motions for con-

tempt of its own orders. *Edwards v. Campbell*, 2008 ME 173, ¶ 8, 960 A.2d 324, 326 (discussing the court's subject matter jurisdiction to enforce divorce judgments through contempt proceedings). The court's power to impose sanctions for contempt is based on its inherent and statutory authority. M.R. Civ. P. 66(a)(1); *see* 4 M.R.S. § 114 (2010) ("The Superior Court may ... punish for contempt...."); *Linscott v. Foy*, 1998 ME 206, ¶ 21, 716 A.2d 1017, 1022. The procedure for exercising that authority is provided in M.R. Civ. P. 66. M.R. Civ. P. 66(a)(1); *Linscott*, 1998 ME 206, ¶ 21, 716 A.2d at 1022; *see also* M.R.Crim. P. 42 (cross-referencing Rule 66). For punitive contempt sanctions in plenary proceedings, the Rule directs the court to "proceed as provided by the Maine Rules of Criminal Procedure for the prosecution of a Class D crime...." M.R. Civ. P. 66(c)(2); *State v. Manter*, 2001 ME 164, ¶ 5, 784 A.2d 513, 515. The court has discretion to "impose a punitive sanction that is proportionate to the conduct constituting the contempt." M.R. Civ. P. 66(c)(3). If the court contemplates that "a punitive sanction of imprisonment of more than 30 days ... may be imposed, trial shall be to a jury unless waived by the alleged contemnor." M.R. Civ. P. 66(c)(2)(D).

[¶ 15] The court's subject matter jurisdiction to hold contempt proceedings to punish noncompliance with a court order is clearly established. *See Edwards*, 2008 ME 173, ¶ 8, 960 A.2d at 326. Consistent with its inherent and statutory authority and the procedure prescribed by Rule 66(c), the court docketed this case as a criminal case, it conducted the case as a criminal proceeding, and it afforded St. Onge an opportunity for a jury trial.

#### 2. Categorization of Contempt as a Crime

[¶ 16] St. Onge also argues that the court did not have authority to "charge a

new Class D crime of criminal contempt out of thin air."

[¶ 17] We review a court's interpretation of procedural rules de novo. *Town of Poland v. T & M Mortg. Solutions, Inc.*, 2010 ME 2, ¶ 6, 987 A.2d 524, 526. By its plain language, Rule 66(c) provides that a plenary contempt proceeding for punitive sanctions shall proceed as provided by the criminal rules for the prosecution of a Class D crime. However, contempt with punitive sanctions is not defined as a Class D crime by rule or statute. Indeed, we have stated that "we no longer categorize contempt as either 'civil' or 'criminal' but, rather, as 'punitive' or 'remedial.'" *Manter*, 2001 ME 164, ¶ 5, 784 A.2d at 515. The classification of St. Onge's offense as "Class D" on the summons and on the judgment and commitment form, therefore, was error.

[¶ 18] We find, however, that it is highly probable that the court's classification of St. Onge's contempt charge as a Class D crime did not adversely affect his substantial rights, and we disregard the error as harmless. *See* M.R.Crim. P. 52(a); *In re Scott S.*, 2001 ME 114, ¶¶ 24–25, 775 A.2d 1144, 1152 (discussing that there is no significant distinction between the harmless error standards in civil and criminal matters). Nevertheless, we recognize that an adjudication of contempt with punitive sanctions is not a Class D crime, and we modify the judgment accordingly. *See* M.R.Crim. P. 50.

### B. St. Onge's Remaining Claims

[¶ 19] St. Onge's remaining contentions do not merit more than brief discussion.

[¶ 20] The court did not commit clear error or abuse its discretion when it excluded evidence related to St. Onge's state of mind as not relevant to disproving the elements supporting the imposition of punitive sanctions. *See* M.R. Evid. 401, 402; *State v. Berke*, 2010 ME 34, ¶ 10, 992 A.2d 1290, 1292; *see also* M.R. Civ. P. 66(c)(3). Furthermore, the constitutional due process guarantee of a "meaningful opportunity to present a complete defense is not offended by the exclusion of evidence that is ... only marginally relevant...." *State v. Mitchell*, 2010 ME 73, ¶¶ 31, 33, 4 A.3d 478, 486 (quotation marks omitted).

[¶ 21] By appearing and participating fully in the hearing, St. Onge submitted to the personal jurisdiction of the court and thereby waived any challenge regarding personal jurisdiction. *See State v. Leonard*, 470 A.2d 1262, 1266 (Me.1984). To the extent that St. Onge challenges the legal sufficiency of the complaint as an issue concerning an irregularity of the proceedings, he waived it as a defense because he did not raise this challenge by motion before trial as required by M.R.Crim. P. 12(b)(2), and we do not consider it on appeal. *See State v. Brown*, 1998 ME 129, ¶ 5, 712 A.2d 513, 515–16; *State v. Dadiego*, 617 A.2d 552, 554 (Me.1992).

[¶ 22] With respect to St. Onge's equitable estoppel argument, Winterwood's acceptance of composting materials in October 2009, November 2009, and March 2010 could not have been induced by the alleged misrepresentation by the State's attorney that St. Onge alleges was made in April or May 2010.[1] As a result, the doctrine of

---

1. Although St. Onge proffered that the attorney for the State made a misrepresentation "sometime in April or May," the proffer did not specify in which year the misrepresentation was made. Because St. Onge's contempt was related to a September 2009 court order, we infer that the alleged misrepresentation was made in April or May of 2010. If the alleged misrepresentation had been made in April or May of 2009 or earlier, it would have

equitable estoppel does not apply in this case.  *See Windham Land Trust,* 2009 ME 29, ¶ 38, 967 A.2d at 701 ("[T]he doctrine of equitable estoppel only applies when an individual makes misrepresentations ... that induce detrimental reliance." (quotation marks omitted)).

[¶ 23]   Finally, our review of the record indicates that the court did not commit clear error by implicitly finding that St. Onge's oral and written waiver of his right to a jury trial was knowing, intelligent, and voluntary.  *See State v. Ouellette,* 2006 ME 81, ¶ 21, 901 A.2d 800, 807; *State v. Mitchell,* 593 A.2d 1047, 1049 (Me.1991).

The entry is:

The judgment is modified by striking the "Class D" classification of the adjudication of contempt.   As modified, judgment affirmed.

predated the relevant court order and would not support an equitable estoppel argument.