MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2014 ME 73
Docket:      Han-13-331
Argued:      February 12, 2014
Decided:     May 29, 2014

Panel:       SAUFLEY, C.J., and ALEXANDER, LEVY,* SILVER, GORMAN, and JABAR, JJ.**

ESTATE OF CLARENCE WEATHERBEE

\*\*\*\*\*

ESTATE OF HELEN WEATHERBEE

SAUFLEY, C.J.

[¶1]  Peggy McPike, daughter of Helen and Clarence Weatherbee, appeals from a judgment of the Hancock County Probate Court (*Patterson, J.*) directing that her brother, Michael Weatherbee, be compensated out of their parents' estates for $95,855 in attorney fees and expenses.[1]  Michael incurred these fees in a Superior Court action that he brought against McPike, which resulted in a judgment in favor of their parents' estates in the amount of $92,400 in restitution, plus interest and costs.  McPike argues that the claim seeking attorney fees from the estates is precluded because it could have been, but was not, pursued in the Superior Court; that the claim is barred because it was untimely filed; and that the

---

\*  Levy, J., sat at oral argument and participated in the initial conference but resigned before this opinion was adopted.

\*\*  Mead, J., sat at oral argument but did not participate in the development of the opinion.

[1]  In this opinion, we will use "attorney fees" to mean both attorney fees and expenses.

2

Probate Court erred or abused its discretion in applying the common fund doctrine to require that attorney fees be paid by the estates. We vacate the judgment because we conclude that the common fund doctrine is inapplicable and there is no other basis for allowing attorney fees.

## I. BACKGROUND

[¶2] The following background facts are taken from the Superior Court judgment (Penobscot County, *Anderson, J.*) entered in litigation brought by Michael Weatherbee to recover money misappropriated by his only sibling, Peggy McPike, while she was handling her parents' money for their care. In early 2001, McPike began handling her mother's accounts. With Michael's consent, McPike was exercising power of attorney for Helen, who was suffering from dementia. Between April 2001 and the end of 2002, McPike withdrew $92,400 in cash from her parents' accounts for her own personal use.

[¶3] Clarence died on June 22, 2003, and Michael petitioned for formal adjudication of intestacy in May 2005. In 2007, the Probate Court appointed a disinterested attorney as personal representative of Clarence's estate.

[¶4] In December 2007, Michael commenced an action against McPike in the Superior Court seeking equitable relief and to avoid transfers to McPike from her parents' accounts. With leave of the Superior Court, Michael, individually and as co-guardian of Helen, filed an amended complaint that alleged the following

claims: count one sought a true and just accounting of Helen's assets; count two sought to avoid transfers based on undue influence, *see* 33 M.R.S. §§ 1021-1023 (2013); count three alleged McPike's abuse of a confidential relationship; count four sought restitution for Clarence's estate to recover misappropriated funds; count five sought a constructive trust for Clarence's estate; count six sought damages for Michael due to McPike's tortious interference with the reasonable expectation of a legacy; and count seven sought the recovery of funds obtained from Clarence's estate through undue influence, *see id.* Clarence's estate was named as a defendant. The personal representative entered an appearance as counsel for Clarence's estate as a defendant in the action.

[¶5] Helen died intestate on July 16, 2008. In October 2008, the Probate Court granted a stay of all pending claims in probate concerning McPike's alleged improper transfers, pending the outcome of the Superior Court action. The personal representative of Clarence's estate was appointed as personal representative of Helen's estate, and through the personal representative, Helen's estate was joined by consent as a plaintiff in the Superior Court action. The personal representative never entered an appearance as counsel for Helen's estate, and Michael's attorney never entered an appearance on behalf of either estate.

[¶6] The Superior Court proceedings culminated in a five-day trial after which the court entered its judgment. The court considered both estates to have

4

been constructively joined as plaintiffs through the personal representative. Specifically, Helen's estate was joined as a plaintiff on counts one, two, and three of the amended complaint, and Clarence's estate—although initially named as a defendant—was considered to have been joined as a plaintiff with regard to counts four through seven.[2]

[¶7]  The court construed count one, the claim for an accounting of Helen's assets, as an unjust enrichment claim and found for Helen's estate.  The court also found for Helen's estate on count three based on a finding that McPike had abused a confidential relationship through undue influence.  The court found for Clarence's estates on counts four and five, treating them as unjust enrichment claims.  As to all of these counts, the court dismissed Michael as a plaintiff for lack of standing.  The court found for Michael individually on count six based on a finding that McPike had tortiously interfered with Michael's reasonable expectation of a legacy.  The court found for McPike on all other counts.  Michael requested that damages not be paid to him individually and instead only requested restitution to the estates.

[¶8]  The court awarded the judgment as restitution to the estates, consistent with Michael's request.  Specifically, the court ordered McPike to pay a total of

---

[2]  The treatment and representation of the estates throughout the Superior Court proceedings was less than clear.

$92,400 in restitution—$53,950 to Helen's estate and $38,450 to Clarence's estate. The court ordered that the judgment could be effectuated by deeming the estates to hold more than they actually do—Helen's estate holding an additional $53,950 and Clarence's holding an additional $38,450—and then deeming McPike to have already received those amounts in distribution. Thus, depending on the amount ultimately determined to be in each parent's estate, McPike might not be required to make any actual payment to her brother or to the estates. The judgment was entered on March 23, 2012. Neither party challenged the relief granted, and no appeal has been taken from the Superior Court's judgment. McPike consented to employing the method of payment that would augment the estates and deem her to have already received $92,400 out of the estates.

[¶9] Michael then presented his attorney fees from the Superior Court litigation to the personal representative and requested payment from the estates. On June 28, 2012, the personal representative filed a petition in the Probate Court with regard to both Clarence's and Helen's estates seeking instructions regarding the payment of Michael's attorney fees. An itemization of $95,855 in claimed attorney fees was filed in the Probate Court on July 17, 2012.

[¶10] Although McPike challenged both the legal basis for allowing the fees and the factual basis for the extensive fees themselves, the Probate Court held only a nonevidentiary hearing. The court entered a judgment after that hearing directing

6

the personal representative to pay Michael's attorney fees and expenses out of the estates in the requested amount of $95,855. The court concluded that the Superior Court litigation had ended on March 22, 2012, when the judgment was signed, and that an itemized list of fees had been submitted to the Probate Court on July 17, 2012—within the four-month limitation period of 18-A M.R.S. § 3-803(b)(1) (2013). It further concluded that the claim was not precluded by the doctrine of claim preclusion. Although the court concluded that the Probate Code did not authorize the payment of the attorney fees, it ultimately determined that the fees were payable from the estates pursuant to the equitable common fund doctrine, which can allow the recovery of attorney fees out of a common fund recovered for the benefit of more than one party. *See Doucette v. Pathways, Inc.*, 2000 ME 164, ¶ 7, 759 A.2d 718.

[¶11] In both Helen's and Clarence's probate matters, McPike filed timely notices of appeal, and we ordered that the two appeals be consolidated.

## II. DISCUSSION

A.    Claim Preclusion

[¶12] McPike contends that the attorney fee claim is precluded under the doctrine of claim preclusion because the same parties were parties to the Superior Court litigation, which arose out of the same set of facts, and the claim for attorney fees could have been presented in that action. "Claim preclusion bars the

relitigation of claims if: (1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been, litigated in the first action." *Wilmington Trust Co. v. Sullivan-Thorne*, 2013 ME 94, ¶ 7, 81 A.3d 371 (quotation marks omitted).

[¶13]  Here, the claim for attorney fees could not have been brought in the Superior Court because (1) no abuse of the litigation process has been asserted that would justify the application of the common law exception to the American Rule that authorizes an award of attorney fees as sanctions, *see Cimenian v. Lumb*, 2008 ME 107, ¶ 11, 951 A.2d 817, and (2) any other basis for approving the fees would arise either directly from probate law, *see* 18-A M.R.S. §§ 1-601, 3-720, 3-721 (2013), or from some other equitable doctrine that could be considered if those probate statutes did not provide a legal basis for an award.  Michael brought his complaint in the Superior Court and included tort claims that sought damages owed to him personally, not only damages owed to the estate. *See* 4 M.R.S. § 252 (2013); *Voisine v. Tomlinson*, 2008 ME 133, ¶¶ 11, 12, 955 A.2d 748; *cf. In re Hiller*, 2014 ME 2, ¶ 23, 86 A.3d 9 (holding that the Probate Court had subject matter jurisdiction over a claim for breach of fiduciary duty in which it was asserted that assets had been taken from the estate).  With those tort claims decided, the Superior Court could properly leave to the Probate Court the task of

8

interpreting the Probate Code to determine whether the Code authorized the payment of attorney fees out of the estates or, if the Code did not, some other equitable doctrine justified the award of attorney fees. *See* 4 M.R.S. § 252 (stating that the courts of probate and the Superior Court have concurrent equitable jurisdiction).

B.      Statutory Bar Against Late-Filed Claims

[¶14]  McPike argues that the attorney fee claim was barred by 18-A M.R.S. § 3-803(b)(2), which bars a claim against an estate filed more than four months after the claim arises.  Whether a claim is barred by the statute of limitations is a legal question subject to de novo review.  *Estate of Gray*, 2013 ME 29, ¶ 7, 61 A.3d 747.  Statutes of limitation are strictly construed.  *Id.*

[¶15]  Section 3-803 establishes the limitation period for bringing claims against an estate that arise after the decedent's death:

> **(b)** All claims against a decedent's estate which arise at or after the death of the decedent, including claims of the State and any subdivision of the State, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort, or other legal basis, are barred against the estate, the personal representative, and the heirs and devisees of the decedent, unless presented as follows:
>
> > **(1)** A claim based on a contract with the personal representative, within four months after performance by the personal representative is due; or

**(2)** Any other claim, within the later of 4 months after it arises, or the time specified in subsection (a), paragraph (2) [nine months of the decedent's death].

18-A M.R.S. § 3-803.

[¶16]  The Superior Court judgment was signed on March 22, 2012, and entered on the following day.  Thus, on March 23, 2012, it became clear from the entry of a final judgment that the litigation resulted in an award that could be understood to benefit the estates.  It is that benefit to the estates that generated Michael's claim in probate for attorney fees from the estates.  The personal representative petitioned for instructions regarding Michael's claim for attorney fees roughly three months after entry of the Superior Court judgment, on June 28, 2012, within the four-month limitations period. The Probate Court properly concluded that section 3-803 does not bar Michael's claim.

C.    Attorney Fees

[¶17]   Whether the trial court is authorized to award attorney fees is generally a question of law.  *See Linscott v. Foy*, 1998 ME 206, ¶ 16, 716 A.2d 1017.  At common law, the American Rule ordinarily applies to "prohibit[] taxing the losing party in litigation with a successful opponent's attorney fees."  *Id.* (quotation marks omitted).  This common law rule will not apply, however, if a statute or a recognized common law exception to the American Rule authorizes the award of fees to the prevailing party.  *See id.*  For instance, trial courts possess the

limited, sparingly used, inherent authority to sanction parties or attorneys who clearly abuse the litigation process in the extraordinary circumstances where significant bad faith has been demonstrated. *Id.* ¶ 17.

[¶18] Here, Michael has asserted two types of exceptions to the American Rule on appeal: (1) a statutory exception based on provisions of the Probate Code, *see* 18-A M.R.S. §§ 1-601, 3-721, and (2) the application of the equitable common fund doctrine, which we have recognized at common law to permit an attorney to recover fees from a fund held in common by the attorney's client and other benefited parties, *see York Ins. Grp. of Me. v. Van Hall*, 1997 ME 230, ¶¶ 4, 9, 704 A.2d 366 (authorizing the application of the common fund doctrine when an insured incurs attorney fees to recover funds that benefit the subrogated insurer).

1.     Probate Code Attorney Fee Provisions

[¶19] Michael argues that two provisions of the Probate Code authorized the recovery of attorney fees in this case: 18-A M.R.S. § 1-601 and 18-A M.R.S. § 3-721.[3] In interpreting statutes, "we look first to [their] plain meaning and seek to give effect to the intent of the Legislature." *Estate of Jacobs*, 1998 ME 233, ¶ 4, 719 A.2d 523; *see also Estate of Ricci*, 2003 ME 84, ¶ 28, 827 A.2d 817 ("We

---

[3] Although the Probate Court also considered whether fees could be awarded pursuant to 18-A M.R.S. § 3-720 (2013), Michael does not, on appeal, challenge the court's determination that this statute cannot apply.

review whether a court has exceeded its authorization in awarding attorney fees pursuant to section 1-601 for an error of law.").

[¶20] The statutory language of section 1-601[4] does not authorize Michael's recovery of attorney fees because it plainly states that the costs of litigating the contest "in the original or appellate court of probate"—not in any other court— may be recovered if they meet statutory requirements. 18-A M.R.S. § 1-601. Section 3-721 is also inapplicable because neither Michael nor his counsel were paid by the personal representative to act on behalf of the estate.[5] The Probate Court properly concluded that Michael had no statutory basis to recover the attorney fees that he incurred in the Superior Court.

---

[4] Title 18-A M.R.S. § 1-601 (2013) provides, in relevant part:

In contested cases in the original or appellate court of probate, costs may be allowed to either party, including reasonable . . . attorney's fees, to be paid to either or both parties, out of the estate in controversy, as justice requires. In those cases where a will is being contested on the grounds of undue influence or mental capacity, attorney's fees and costs shall not be allowed to the party contesting the will if he is unsuccessful.

[5] Title 18-A M.R.S. § 3-721 (2013) provides, in relevant part:

(a) After notice to all interested persons, on petition of an interested person or on appropriate motion if administration is supervised, *the propriety of employment of any person by a personal representative, including the employment of any attorney*, auditor, investment advisor or other specialized agent or assistant, *the reasonableness of the compensation of any person so employed*, or the reasonableness of the compensation determined by the personal representative for his own services, *may be reviewed by the court*. Any person who has received excessive compensation from an estate for services rendered may be ordered to make appropriate refunds.

(Emphasis added.)

### 2. Common Fund Doctrine

[¶21] The Probate Court ultimately authorized the payment of attorney fees out of the estates by applying the common fund doctrine. McPike contends that the common fund doctrine is inapplicable because Michael personally is the only one who gained a benefit from the Superior Court litigation.

[¶22] "The common fund doctrine applies when a fund is created to which more than one party is entitled." *Doucette*, 2000 ME 164, ¶ 7, 759 A.2d 718 (quotation marks omitted). "[T]hen, and only then, each party must pay a share of the expenses incurred in creating the fund, including reasonable attorney fees." *Id.* (quotation marks omitted). The common fund doctrine is therefore "an exception to the rule that an attorney-client relationship is a prerequisite to an attorney's right to compensation." *York Ins. Grp. of Me.*, 1997 ME 230, ¶ 6, 704 A.2d 366. The doctrine has equitable roots and is based in part on an effort to prevent unjust enrichment: "To allow others to obtain full benefit from the plaintiff's efforts without contributing . . . to the litigation expenses, [the United States Supreme Court has] often noted, would be to enrich others unjustly at the plaintiff's expense." *US Airways, Inc. v. McCutchen*, --- U.S. ---, ---, 185 L. Ed. 2d 654, 666 (2013) (quotation marks omitted); *see also Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

[¶23]  "[A] key element of the common fund [doctrine] is that fees are not assessed against the unsuccessful litigant (fee shifting), but rather, are taken from the fund or damage recovery (fee spreading)."  *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991).  Typically, the common fund doctrine applies when an attorney, acting on behalf of one client, sues one or more defendants and obtains a judgment that benefits both the client and one or more non-clients, after which the attorney seeks to recover fees out of the judgment before funds are distributed.  *See, e.g.*, *Boeing Co.*, 444 U.S. at 474-78.  In such circumstances, the successful party obtains reimbursement from others benefitted by the success.  Accordingly, this fee-sharing "is entirely consistent with the American rule against taxing the losing party with the victor's attorney fees."  *Boeing Co.*, 444 U.S. at 481.

[¶24]  The unusual circumstance here is that McPike is both the defendant in the litigation that created the fund and a beneficiary of the estates that ultimately recovered from her.  The application of the common fund doctrine in these circumstances would result in fee-shifting, rather than fee-spreading, and undermine the rationale that supports the common fund doctrine.  Specifically, the common fund doctrine has been applied by courts because it "differs from exceptions to the American rule in that the doctrine is a mechanism for *fee-spreading*, not *fee-shifting*; the common fund doctrine requires reimbursement

of fees by the *prevailing* party, not the losing party." *Burke v. Arizona State Ret. Sys.*, 77 P.3d 444, 448 (Ariz. Ct. App. 2003) (quotation marks omitted).

[¶25] Here, an award of attorney fees out of the estates would require the reimbursement of attorney fees by the losing party in the Superior Court litigation. Although such reimbursement might have been allowed pursuant to a statutory exception to the American Rule if the personal representative had instead acted to recover funds for the estate through legal action, *see* 18-A M.R.S. §§ 1-601, 3-720, 3-721, here Michael alone commenced the litigation outside of the Probate Court; the causes of action that Michael alleged included claims that were personal to him; Michael's counsel was never retained by the personal representative to represent either of the estates; and Michael is the only individual who actually benefits from the Superior Court judgment, which he elected to request be paid to the estates despite a finding in his favor on a tort claim. The application of the common fund doctrine in these circumstances would, in function, allow Michael to recover a portion of his attorney fees from McPike for litigation that he prosecuted against her, which would contravene the American Rule. Because the common fund doctrine is not intended to interfere with that rule, *see Boeing Co.*, 444 U.S. at 481, we will not apply the doctrine in this case.

3.    Conclusion

[¶26]  Because neither the Probate Code nor the common fund doctrine or any other equitable exception to the American Rule provides a basis for the award of attorney fees out of the estates in this matter, we vacate the judgment of the Probate Court.

The entry is:

Judgment vacated.

---

**On the briefs:**

Frank T. McGuire, Esq., and Tracy J. Roberts, Esq., Rudman Winchell, Bangor, for appellant Peggy McPike

Charles E. Gilbert, III, Esq., and Julie D. Farr, Esq., Gilbert & Greif, P.A., Bangor, for appellee Michael Weatherbee

**At oral argument:**

Frank T. McGuire, Esq., for appellant Peggy McPike

Charles E. Gilbert, III, Esq., for appellee Michael Weatherbee

Hancock County Probate Court docket numbers 2005-196; 2008-345
FOR CLERK REFERENCE ONLY