2008 ME 107

**Nahabet CIMENIAN**

v.

**Carolle LUMB.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Feb. 28, 2008.

Decided: June 26, 2008.

Chris A. Nielsen, Esq., Nielsen & Bly, P.C., Biddeford, ME, for Nahabet Cimenian.

Joseph L. Goodman, Esq., Goodman Law Firm, P.A., Portland, ME, for Carolie Lumb.

Panel: CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

CLIFFORD, J.

[¶ 1] Nahabet Cimenian appeals from the order of the Superior Court (York County, *Fritzsche, J.*) awarding attorney fees to Carolle Lumb following the entry of judgment in favor of Lumb on Cimenian's complaint against her. Although Cimenian did not appeal from the underlying judgment in favor of Lumb, he contends that the post-judgment order awarding attorney fees is unwarranted, and constitutes an abuse of the court's discretion. We disagree and affirm the order.

## I. BACKGROUND

[¶ 2] From the trial transcript and the court's judgment on the merits, which was not appealed, the following facts are taken. This case started with what the trial court described as a "very murky, very questionable transaction." In 1997, Nahabet Cimenian, William Lumb, who is Carolle Lumb's husband, and Allen Fernald entered into a partnership formed to purchase two bankruptcy claims in the bankruptcy estate of Cimenian's mother-in-law, Catherine Petit. The claims included interest in real property located at One Fourth Street, Old Orchard Beach (the beach house). According to Cimenian, he paid approximately $70,000 for a one-quarter share in the property, Fernald paid approximately $140,000 for a one-half share, and William received a one-quarter share for which he paid nothing. The partnership decided that title to the beach house would be held in William's name alone. The court found the purpose of the partnership to be unclear: "there was this one quarter, one quarter, one half partnership, but the details are very indefinite and there's nothing specifically about mortgaging or not mortgaging." The court further stated:

> Other than the one quarter, one quarter, one half shares, there is nothing explicit as to when [the beach property] would be sold, who would buy anybody out, who would pay the expenses, though I guess it's assumed they would share in that ratio, but that's not stated, and there is no prohibition in this partnership arrangement that explicitly says that Mr. Lumb can't mortgage it.

[¶ 3] Subsequently, Catherine Petit was indicted for bankruptcy fraud. On June 19, 1998, William took out a mortgage on the beach house. The money from the mortgage, at least in part, was put in an account called the Legal Defense Fund, and was used to pay for Catherine Petit's legal representation and other related costs. Although Cimenian denied any knowledge of the Legal Defense Fund, there was evidence that he had contributed money to the fund. The court specifically found that Cimenian's testimony denying any knowledge of the Legal Defense Fund was untruthful.

[¶ 4] In October 1999, William sold the beach house to James and Patricia Brown. None of the profits from the sale were given to Cimenian.

[¶ 5] Subsequent to the sale of the beach house, William filed for bankruptcy. Cimenian had the opportunity to bring a claim against William regarding the sale of the beach house and hired an attorney for that very purpose. Cimenian's attorney withdrew as his counsel because Cimenian made several unethical requests of him. Cimenian did not obtain subsequent counsel, and he filed no claim against William's bankruptcy estate.

[¶ 6] Foreclosed from filing suit against William Lumb because William had been discharged in the Bankruptcy Court, Cimenian filed a nine-count complaint against Carolle Lumb, based on the transactions involving the beach house. Cimenian sought a declaratory judgment, an accounting, and the creation of a constructive trust, and alleged unjust enrichment, constructive fraud, fraud, conspiracy to commit fraud, conversion, and conspiracy to commit conversion. The court entered summary judgment in favor of Lumb on the counts seeking declaratory judgment and an accounting. A nonjury trial was conducted on the remaining counts.

[¶ 7] The trial revealed that Lumb was a cosigner on the mortgage for the beach house, but never held title in the property. She had no role in William's acquisition of the property, nor in its subsequent sale. She did not sign the deed from William conveying the property to the subsequent owners. Following the trial, the court entered judgment for Lumb on all remaining counts of the complaint, finding Cimenian's

suit to be without merit. The court found that, "Ms. Lumb may have made some mistakes in retrospect of not asking some questions about what in the world is going on here or what's this all about. That however is not grounds to sue her." The court found that "none of [the] remaining counts have *even the slightest [ ] merit* after examining all of the evidence." (Emphasis added.) Cimenian did not appeal the court's judgment, nor did he request additional findings of fact.

[¶ 8] Lumb subsequently filed a motion for attorney fees.[1] The court granted the motion and awarded attorney fees in the amount of $50,146.25, finding that the claims brought by Cimenian were "baseless, frivolous and without merit." Further, the court found that "[t]here [were] not good grounds to support the plaintiff's case and it was [intended] to harass the defendant." "This case is one of the few cases," the court stated, "where 'most extraordinary circumstances' exist and attorney's fees should be awarded." Cimenian filed this appeal challenging the award of attorney fees.

## II. DISCUSSION

[¶ 9] We review an award of attorney fees for an abuse of discretion. *See Chiappetta v. LeBlond*, 544 A.2d 759, 760 (Me.1988). Cimenian contends that the court abused its discretion in awarding attorney fees to Lumb because Cimenian did not abuse the litigation process, and his claims were not frivolous, unreasonable or without foundation. Cimenian further argues that the court did not make specific findings as to what conduct constituted the

---

1. The motion for attorney fees was supported by an affidavit and an eighteen page itemized list of charges with the following breakdown: 221.90 hours at a rate of $175 per hour for Attorney Goodman's service, 17 hours at $135 per hour for an associate attorney, 68.97 hours at $125 per hour for an associate attorney, and 5.30 hours at $75 per hour for an associate attorney, providing for a total of $50,146.25.

"extraordinary circumstances" warranting the award of attorney fees.

[¶ 10] Cimenian, however, did not appeal the court's judgment in favor of Lumb, nor does he challenge the factual findings underpinning that judgment. Moreover, Cimenian does not claim that the *amount* of the attorney fees incurred by Lumb, $50,146.25, is unreasonable on its face. The only issue before us is whether the lawsuit prosecuted by Cimenian is sufficiently groundless to justify the award of attorney fees.

[¶ 11] The court found that the award of attorney fees was justified because the claims were "baseless, frivolous and without merit," "intended to harass" the defendant, and that "most extraordinary circumstances" existed. "The court's authority to award attorney fees may be determined by statute, by the 'American Rule' at common law that generally prohibits taxing the losing party in litigation with a successful opponent's attorney fees, or *by certain recognized common law authorizations of attorney fees*." *Linscott v. Foy*, 1998 ME 206, ¶ 16, 716 A.2d 1017, 1021 (quotation marks omitted). A trial court possesses "inherent authority to sanction parties and attorneys for abuse of the litigation process." *Chiappetta*, 544 A.2d at 760. Such authority should be used sparingly, however, and sanctions should be "imposed only when the abuse of the process by parties or counsel is clear." *Id.* at 761. This inherent authority to award attorney fees, as an exception to the well-established American Rule that parties are responsible for the payment of their own attorney fees, should be exercised only "in the most extraordinary circumstances." *Linscott*, 1998 ME 206, ¶ 17, 716 A.2d at 1021. "[A]ttorney fees may not be awarded as a sanction in the absence of significant bad faith on the part of a litigant or his agents." *Id.*

[¶ 12] We have upheld an award of attorney fees when a litigant repeatedly refused to comply with a final court order and filed multiple suits in several jurisdictions, suits which were merely collateral attacks on a prior court order. *Id.* ¶ 18, 716 A.2d at 1021–22. We had "no difficulty concluding that [those] actions were undertaken in bad faith and were abusive of the court and the other parties." *Id.* ¶ 18, 716 A.2d at 1022.

[¶ 13] Here, Cimenian was not able to bring claims against William Lumb because William's debts had been discharged in bankruptcy. His alleged claims against William arose out of William's ownership and sale of the beach house. Cimenian brought these claims against Carolle Lumb even though she never held title to or any ownership interest in that property. Moreover, the court found that Cimenian testified in court untruthfully about not knowing about Catherine Petit's Legal Defense Fund, and about the reason why his attorney withdrew from representing him during William's bankruptcy proceedings. In addition to bringing an action without "even the slightest merit," testifying untruthfully about matters relevant to the issues being litigated is bad faith and can constitute extraordinary circumstances. Accordingly, the court did not act beyond its discretion in awarding attorney fees as a sanction, and the court's findings, delivered from the bench, were sufficient to support the award of attorney fees.

The entry is:

Judgment affirmed.