STATE OF MAINE                                    SUPERIOR COURT
YORK, ss.                                         Civil Action
                                                  Docket No. RE-14-83

RICHARD A. ALDERETTE,                    )
                                         )
                    Plaintiff            )
                                         )
        vs.                              )
                                         )
ROGER S. GRANT and                       )          JUDGMENT
MELISSA L. RIDLON,                       )
                                         )
and                                      )
                                         )
PETER G. JARVIS and                      )
DONNA E. GASPAR                          )
                                         )
                    Defendants           )

This case came before the court for final hearing on January 19, 2018 and February 6,

2018. Plaintiff is represented by Peter Hatem, Esq. Defendants are represented by Susan

Driscoll, Esq. After hearing testimony from each of the parties and reviewing the documentary

evidence, the Court finds as follows:

## Procedural Background

This is a claim between abutting landowners in Hollis. The material issues were litigated

and decided in a prior proceeding involving the same parties, RE-03-079 ("the Underlying

Lawsuit"). Plaintiff's case is essentially an enforcement action alleging that the defendants

failed to comply with the prior ruling in the Underlying Lawsuit.

The Underlying Lawsuit was decided in 2006. Plaintiff began this action in June, 2014.

The Complaint sets forth four counts. Counts 1 and 2 are against defendants Peter G. Jarvis and

his wife, Donna E. Gaspar (hereinafter referred to collectively as "Jarvis") who own property at

982 River Road abutting plaintiff's parcel. Plaintiff asserts in his Complaint that Jarvis

1

"removed fill and planted grass" causing water to pool in the right of way preventing his ingress and egress and as a result interfered with his use of the easement. (Complaint ¶¶ 19, 20, 23.)

Count III is against defendants Roger Grant and his long-time partner Melissa Ridlon (hereinafter collectively "Grant"), owners of abutting property at 976 River Road from Alderette. Count III asserts that Grant "placed, and/or maintained and continue to maintain crushed stone" and "placed, and/or maintained and continue to maintain fill" in a certain watercourse, and that these obstructions impede flow of run off from plaintiff's property and prevent normal drainage in violation of the prior order. (Complaint ¶¶26, 27, 28, 29).

Count IV asserts a claim for contempt and was dismissed prior to trial for failure to comply with M.R.Civ.P 66(d)(2).

Jarvis asserts a counterclaim. *See* Answer, Motion to Dismiss and Defendant's Counterclaim. The counterclaims for relief request, among other things, that the court determine that Plaintiff' "is responsible for the damages incurred on the Jarvis/Gaspar and Grant/Ridlon properties and for common law trespass and punitive damages under 14 M.R.S.A. § 7752 [sic]," "determine that the Plaintiff's use of the private right of way is for the "purpose of ingress and egress" only . . . determine that plaintiff abandoned obstructions on the right way of way interfering with defendants' "peaceful enjoyment" of their land" . . . [and deny] plaintiff the right to store, park or abandon any organic of inorganic materials . . . determine that the Plaintiff may not disturb the soil, make a material change to the surface of the fight of way or make destructive waste . . ." Grant asserted a counterclaim pursuant to 14 M.R.S.A. §7552 arising from the undisputed fact that Mr. Alderette, without notice or permission, had a large healthy tree on the Grant property cut down in 2007.

## Findings of Facts

2

Alderette owns a parcel situated behind the defendants' houses in Hollis. Alderette uses the land for storage and light farming

The plaintiff's parcel sits upland of defendants. Defendants' properties are fronted by River Road, essentially upland and parallel to the Saco River.

Jarvis moved into their property in 1998. Grant moved into their house in 2001. Neither of the defendants had an easement in their deeds benefitting Alderette. When they moved in, their abutting yards were comprised of grass lawns with no visible signs of a path or road.

In the early 2000's, Alderette began excavating over the defendants' land in a "bush hog" tractor. Further, around that time frame, Grant decided to manage the high water table by constructing two ornamental ponds on their property. The ponds have standing pipes to regulate their depth. Any overflow from the pond runs into the standing pipes and is carried through a culvert under River Road down to the river.

Disputes over the easement and issues related to drainage from plaintiff's property gave rise to the Underlying Lawsuit. In that case, the court determined three issues that needed to be resolved: (1) the location of an easement benefitting Plaintiffs' property across land own by the Defendants; (2) whether the Plaintiffs' property is drained by a watercourse over Defendants' property and whether it had been obstructed; and (3) whether Defendants acted in contempt of a prior court order. The case was heard December 7-8, 2005 and was decided by judgments rendered April 25, 2006 and June 22, 2006.

## Counts I and II Related to the Easement

The Underlying Lawsuit dealt with the location of an easement. The court stated that Alderette has "an unrestricted easement for purposes of ingress and egress" to his property. *See* Judgment dated April 28, 2006. The 10-foot easement runs from River Road (route 35) over

3

land of Gasper/Jarvis (between the defendants' houses), then jogs left and runs over land of Ridlon/Grant. The easement is bisected by the watercourse.

As shown by photographs, in May 2007, Alderette had a contractor dig up the defendants' lawns, excavate the right of way and place large quantities of dirt and/or sand along the right of way. A few days later, he had a large healthy tree on the Grants' property cut down, because it encroached slightly along the right of way. He did this without the defendants' knowledge or consent. After the tree was cut down and limbed, it remained in the right of way for four years before Grant removed it.

In addition to cutting down the tree, Mr. Alderette placed large rocks or "hardscape" into the right of way. At some point he spread some of the rocks along the right of way, but for the most part, the rocks sat in two large piles for six years until Jarvis finally removed them.

Mr. Alderette does not dispute that he had the tree cut down or that he placed the rocks in the right of way. He testified the police instructed him not to remove the debris, and so he left it there Mr. Alderette's actions resulted in blocking the right of way. The defendants testified credibly that the tree and rocks constituted unsightly debris and interfered with their ability to enjoy their yards. One of the Grant children suffered an ankle injury from the rock pile.

In 2012, Jarvis undertook landscaping in their backyard and at that time had the rocks removed from the right of way. Jarvis put down loam in the area of the right of way and attempted to regrow grass there, Mr. Alderette went on the right of way, and proceeded to rake off the hay and grass seed.

Mr. Alderette testified that Jarvis interfered with the right of way because Jarvis graded the right of way in a manner that caused surface water to pool. The court viewed a photograph

4

from 2015 (a year after the lawsuit was filed) of a large puddle in the area of the right of way. With regard to this puddle, the court heard credible evidence from defendant Peter Jarvis that that particular photograph was taken immediately following an extreme and unusual rain event, that the area was extremely level and that if surface water pooled it was temporary and the result of a significant weather event. Other photographs, including photographs taken a few weeks *before* the Complaint was filed in 2014, show that the area is level, dry and open.

The court finds that Jarvis is not in violation of the 2006 Judgment as a result of surface water that may intermittently accumulate due to natural weather conditions. *See Johnson v. Whitten*, 384 A.2d 698, 700 (Me 1978)("Absent an *artificial* collection of water which is discharged, Maine law recognizes no liability as arising, *per se*, merely from the obstruction or diversion, of the natural drainage of surface water." (citations omitted, emphasis in original.)

Alderette testified that Jarvis left a wagon in the right of way thereby interfering with his right of access. He provided no time frame for that allegation or any photographic evidence. It is not alleged in the Complaint. He has not met his burden of proof on that issue.

Defendants testified credibly that they understood and accepted the existence of the right of way and did not block or impede it at any time. Photographs support their testimony. The Court finds that Alderette did not meet his burden of proving Counts I and II and judgment is therefore entered in favor of Jarvis on those counts.

## The Jarvis Counterclaims

### A. Declaratory Judgment[1]

---

[1] 14 M.R.S. §5953 states, "Courts of record within their respective jurisdictions shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed."

5

In the Underlying Lawsuit, the court described the right of way as "an unrestricted easement for purposes of ingress and egress to Plaintiff's property." I find that this description is ambiguous. It is that ambiguity that gave rise to the parties' differing understanding and expectations regarding the right of way.

This court heard testimony that the easement at issue originates from a 1934 deed from Fred D. Hutchinson to Vasco V. Berry, York County Registry of Deeds Book 846, page 223, that describes "an open right of way...ten feet wide from said road across my homestead lot next and adjoining the line between my land and that of Gladys Rogers...." This language apparently then dropped out of the deeds.

In his 2006 Judgment, Justice Brennan determined that the right of way was "an unrestricted easement for purposes of ingress and egress to Plaintiff's property." No such language appears in deeds. Because only the location and not the scope of the easement were at issue in the Underlying Lawsuit, and because I find the language in the 2006 Judgment to be ambiguous, I hereby grant the Jarvis counterclaim and declare the rights of the parties regarding the scope of the right of way.

"Language is ambiguous when it is reasonably susceptible to different interpretations." *Beckerman v. Conant,* 2017 ME 142, ¶ 13, 166 A.3d 1006, 1010. "The scope of a party's deeded easement rights are determined from the language on the face of the deed." *Id.* (citation omitted). "If language in a deed is ambiguous, and the intention of the parties is in doubt, the court may then resort to rules of construction and may examine the deed in light of extrinsic circumstances surrounding its execution." *Id.* citing *McGeechan v. Sherwood,* 2000 ME 188, ¶ 24, 760 A.2d 1068.

6

"The scope of a deeded right of way is not necessarily unlimited." *Guild v. Hinman*, 1997 ME 120 ¶ 6, 695 A.2d 1190, 1192 citing *Fine Line, Inc. v. Blake*, 677 A.2d 1061, 1064 (Me. 1996)(holding that even a right of way 'for all purposes' does not automatically include the right to install utility lines.)

"[A]n easement for a right of way, without more, does not permit the grantee to 'disturb the soil upon the fee' of the owner of the servient estate.' *Davis v. Bruk*, 411 A.2d 660, 666 (Me. 1980)(quoting *Littlefield v. Hubbard*, 120 Me. 226, 230, 113 A. 304, 205 (1921).) In *Davis*, the Court acknowledged that paving a right of way may be convenient and possibly beneficial, but still held that "such material change in the surface of the right of way may give rise to an added burden on the servient estate, such as subjecting it to rapid transit of motor vehicles near the defendant's home and posing safety problems to the occupants thereof which a country way may not generate." *Id.*

In the granting instrument, there is a reference to the residential nature of the area and it describes that the way specifically crosses the grantor's "homestead lot." The fact that the right of way is only ten feet wide supports that it was never intended as a roadway for heavy equipment which exceed its width or would damage the unimproved nature of the way

The language of the grant merely describes an "open right of way." This was intended to mean only that the area could not be fenced or enclosed or that the dominant estates could place impediments or park vehicles obstructing it.. The court also finds the defendants' testimony credible that when they purchased their homes, their lawns were grassy with no indication of a right of way and there was no evidence introduced that the way had even been improved beyond its natural state.

7

Accordingly, this court finds and declares that the 10-foot wide open right of way conveyed in the 1934 deed from Hutchinson to Berry, in the location determined by the Court in its Judgment dated April 28, 2006 was intended, and shall hereinafter be an easement for the benefit of Alderette, his successors and assigns, to cross over and back within the 10-foot right of way.

The parcel benefitted by the easement shall not have the right to improve the easement to construct a roadway or to disturb the soil. The scope of easement rights does not permit the benefitted parcel to place fill, hardscape, or otherwise excavate or build in the easement. No heavy motorized vehicles such that would significantly disturb the natural grassy condition of the right of way are allowed. The parcel benefitted by the easement shall not have the right to prolonged stay on the right of way, but only to cross over it for purposes of ingress and egress. There was testimony that the way had been utilized by motorized vehicles and this seems consistent with its intended use provided such vehicles are not so large or heavy as to damage the underlying natural and unimproved condition of the surface.

The Defendants had requested a declaration that only foot traffic is allowed. The court denies that request and allows motorized traffic with the caveats above.

Each party in their proposed judgments state that the dominant estate has no obligation to plow snow or clear standing water .The court also declares that as part of this judgment. However plowing or clearing standing water onto the easement is also not allowed.

8

The servient owners, Jarvis, Grant and their successors and assigns, shall keep the right of way area open and not interfere with the ability of the benefitted property owner from coming and going as allowed by this judgment.

### Counterclaims for Nuisance and Trespass

Elements of common law nuisance include (1) that (counterclaim) defendant acted with the intent of interfering with the use and enjoyment of the land by those entitled to that use…with full knowledge that the harm to the plaintiff's interests are occurring or are substantially certain to follow; (2) there was some interference of the kind intended; (3) the interference was substantial such that it caused a reduction in the value of the land; and (4) is was of such a nature, duration or amount as to constitute unreasonable interference with the use and enjoyment of the land. *Johnston v. Maine Energy Recovery Co. LP*, 2010 ME 52, ¶15, 997 A.2d 741, 745 (citations omitted). Under 14 M.R.S. §7552(2)(A), without permission of the owner a person may not "cut down, destroy, damage or carry away any forest product, ornamental or fruit tree, agricultural product, stones, gravel, ore, goods or property of any kind from land not that person's own…

A person is liable for common law trespass if he "intentionally enters land in the possession of the other, or causes a thing or a third person to do so." *Medeika v. Watts*, 2008 ME 163 ¶ 5, 957 A.2d 908, 982. Damages are not an essential element and nominal damages are "presumed to flow from a legal injury to a real property right." *Id. (citation omitted)*.

9

In this case, in 2007 Mr. Alderette cut down Grant's tree and placed it in the right of way on defendants' land. He placed rock piles in the way on defendants' land. The tree remained for four years until Grant removed it in 2011. The rocks remained until 2012 when Jarvis removed them. In 2012, Jarvis attempted to plant grass seed in the right of way and Alderette went onto the right of way, parked his car there and intentionally raked off the hay and removed the grass seed without permission of the landowner. These facts state establish that Alderette is liable for nuisance and common law trespass as alleged in the Jarvis counterclaim. The counterclaimants carried their burden with respect to these claims.

Further, Mr. Alderette is liable for common law and statutory trespass when he went upon the right of way in 2012 without permission and raked away hay and grass seed. Neither the hay nor the grass seed interfered with or impeded Mr. Alderette's right to use the right of way for ingress and egress, even if he believed he had the right to drive on the way. Jarvis testified credibly that the purpose was to clean up the look of his front yard, not to interfere with Alderette's access rights. Alderette exceeded any legal rights he had by going on to the right of way, and removing hay and grass seed put there by the landowners at their expense.

With respect to damages, Mr. Alderette's actions impacted the counterclaimants' peaceful enjoyment of their property over the years and I find that the emotional testimony of the counterclaimants was genuine and credible

Jarvis testified that he incurred around $800 in landscaping costs related to removing the rocks and spreading loam and grass seed in the right of way. I therefore award damages in the amount of $800 in favor of Jarvis and this amount shall be doubled pursuant to 14 M.R.S. §7552(4)(A) for a total of $1,600. The court concludes that double damages are appropriate here

10

rather than treble for the reasons discussed in the sanction section of this judgment regarding ambiguity. Further, Jarvis is entitled to an award of professional services that "may not exceed 50% of the damages recovered." 14 M.R.S. §7552(5). I hereby award attorney's fees in the amount of $1,200, for total damages of $2800.

## Claim Against Grant Related to Watercourse

In the Underlying Lawsuit, the court determined that a channel or creek on Alderette's land was a "watercourse" as that term is defined, and "may not be obstructed by Defendants so as to impede the drainage off Plaintiff's property." In December 2005 when the underlying case was tried, the court found that "a quantity of earth and crushed stone had been deposited in the watercourse, impeding the free flow thereof." The court ordered Ridlon/Grant to remove the obstruction and they promptly did so at the court's direction, as specifically noted in the Judgment.

Based on its prior order from July 2005, the court made a finding of contempt against Ridlon/Grant, but in so finding the court ruled, "No alteration of the existing ornamental pond is ordered at this time, except that the water level in the ponds must be kept at a level not to impede the flow of run-off." *See* Judgment in the Underlying Lawsuit dated June 22, 2006.

The land in this neighborhood is a high water table and is wet due to natural conditions.

Grant testified credibly and presented many photographs that showed over years that the watercourse and ponds were cleared, maintained, and had standing pipes to regulate depth.

Grant further testified credibly that it was in his best interest to make sure that water flowed across his land, through the culvert and out to the Saco River

11

Plaintiff failed to meet his burden and judgment shall enter in favor of the Grant defendants on Count III of the Complaint.

## A. Counterclaim for Violation of 14 M.R.S.A. §7552

Grant asserted a counterclaim based on the fact that Alderette removed a tree from their property without their notice or consent in 2007. Such conduct would be actionable if it had been asserted within the six year statute of limitations. Since it was not asserted until 2014, that claim is untimely.

## Consideration of Sanctions

Defendants ask the court to award sanctions for a lawsuit they contend was baseless, without merit and constituted abuse of the litigation process. *See Cimenian v. Lumb*, 2008 ME 107, ¶ 11, 951 A.2d 817; *Chipletta v. LeBlond*, 544 A.2d 759, 760 (Me. 1988).

The court declines to issue sanctions. Easements are a subservient property right to the dominant rights of the fee owners. Mr. Alderette was not authorized to remove the tree, attempt to improve the surface with gravel, or to remove grass seed. However as the Defendants themselves admit in their proposed judgment, the 2006 judgment of this court may have created an ambiguity with a description of an unrestricted easement for egress and ingress. Mr Alderette may have interpreted that differently than what this judgment clarifies but the court does not conclude sanctions are appropriate.

## ORDER

The Court ORDERS as follows:

Judgment for Defendants Peter Jarvis and Donna Gasper on Counts I and II of Plaintiff's Complaint;

12

Judgment for Defendants Roger Grant and Melissa Ridlon on Count III of Plaintiff's Complaint; Count IV of Complaint is dismissed for failure to comply with M.R.Civ.P. 66(d);

Judgment for Plaintiff on Grant's Counterclaim;

Judgment for defendants Peter Jarvis and Donna Gaspar on counterclaims for nuisance, common law trespass and statutory trespass. Damages in defendants' favor are awarded in the amount of $2800 plus applicable interest;

Judgment for defendants on Jarvis' counterclaim for Declaratory Judgment as follows:

This court finds and declares that the "10-foot wide open right of way" conveyed in the 1934 deed from Hutchinson to Berry, in the location determined by the Court in its Judgment dated April 28, 2006 was intended, and shall hereinafter be, an easement for the benefit of plaintiff, his successors and assigns, to cross over and back for purposes of ingress and egress within the 10-foot right of way on foot only. The parcel benefitted by the easement shall not have the right to disturb the soil or otherwise improve the easement or to construct a road. The scope of easement rights does not permit the benefitted parcel to place hardscape materials, fill or to otherwise excavate or build in the easement. The easement does not permit the use of heavy motorized equipment that would significantly interfere with the natural grass surface. However, motor vehicles that would not cause such damage are allowed. The parcel benefitted by the easement shall not have the right to prolonged stay on the right of way, but only to cross for purposes of ingress and egress.
The servient owners, successors and assigns, shall keep the right of way area open so as to not interfere with the ability of the benefitted property owner from coming and going on foot.

This order shall enter upon the civil docket. The court finally notes that each party submitted proposed judgments. The court edited and made its own independent review of the same so that this judgment is the considered independent decision of the court.

SO ORDERED.

Dated: 4/20/18

_____
Justice, Maine Superior Court

ENTERED ON THE DOCKET ON: 4/20/18

13