STATE OF MAINE
Kennebec, SS

SUPERIOR COURT
CIVIL ACTION
DOCK. NO. AUGSC-CV-2021-131

HUMAN RIGHTS DEFENSE CENTER,          )
                                      )
        Plaintiff,                    )
                                      )
    v.                                )  PROPOSED ORDER
                                      )
MAINE COUNTY COMMISSIONERS            )
ASSOCIATION SELF-FUNDED RISK          )
MANAGEMENT POOL,                      )
                                      )
        Defendant.                    )

Pursuant to M. R. Civ. P. 54 and this Court's December 1, 2022 Order, Plaintiff has moved this Court for an award of $127,127.33 in attorney fees and $3,472.69 in costs and expenses. For the reasons discussed below, Plaintiff's motion is hereby GRANTED.

## DISCUSSION

In this case, the Court was called upon to resolve two related questions: whether Defendant, the Maine County Commissioners Association Self-Funded Risk Management Pool ("Risk Pool") unlawfully withheld documents responsive to a Freedom of Access Act request made by Plaintiff Human Rights Defense Center; and, whether the refusal to produce these documents was made in bad faith.

On December 1, 2022, the Court answered both of these questions in the affirmative. The Court's Order was affirmed by the Law Court on August 22,

2023. Both this Court and the Law Court concluded that the Risk Pool's response constituted a bad-faith refusal. And, both this Court and the Law Court acknowledged that this was the first application of the Freedom of Access Act attorney fee provision. The results in this case, therefore, served not only to clarify and enforce the law for the parties themselves but also to provide guidance to all people in Maine who might hold, or might seek, public records.

After reviewing the submissions of the parties, cited cases, and recent federal cases from the District of Maine, the Court finds the following hourly rates are reasonable, given the qualifications, skill, and experience of the attorneys:

Zachary L. Heiden: $400

Carol Garvan: $350

Anahita Sotoohi: $220

Plaintiff seeks reimbursement for 328 hours of legal work, supported by detailed time records. The Court finds that this was a reasonable number of hours to expend, given the complexity of the issues, the intransigence of the Defendant, and the public interest at stake.

Plaintiff seeks an additional $3,472.69 in litigation costs and expenses. The Court finds that this was a reasonable, and compensable, amount.

Given the public interest involved in this case; the time and hours consumed before resolution; the difficulty of the case; the significance of the

result; and the quality of the attorneys' services, the Court finds that a 1.15 lodestar enhancement in this case is appropriate.

It is hereby ORDERED:

Defendant Maine County Commissioners Association Self-Funded Risk Management Pool shall furnish Plaintiff with a check for $130,600.02, payable to "American Civil Liberties Union of Maine Foundation."

Dated at Augusta, Maine this 16th day of Jan, 2024.

Daniel I. Billings, Justice
Maine Superior Court

STATE OF MAINE                                    SUPERIOR COURT
KENNEBEC, ss.                                     CIVIL ACTION
                                                  DOCKET NO. CV-21-131

HUMAN RIGHTS DEFENSE          )
CENTER,                       )
                             )
            Plaintiff,        )
                             )  **ORDER**
      v.                      )
                             )
MAINE COUNTY COMMISSIONERS    )
ASSOCIATION SELF-FUNDED RISK  )
MANAGEMENT POOL,              )
                             )
            Defendant         )

Pursuant to M.R.Civ.P 54 and this Court's December 1, 2022 Order, Plaintiff has moved for an award of $140,327.63 in attorney fees and $3,472.69 in costs and expenses. For the reasons, discussed below, Plaintiff's motion is GRANTED, in part, with modifications as outlined below.

## DISCUSSION

In this case, the court was called upon to resolve two related questions: whether Defendant, the Maine County Commissioners Association Self-Funded Risk Management Pool ("Risk Pool") unlawfully withheld documents responsive to a Freedom of Access Act request made by Plaintiff Human Rights Defense Center; and, whether the refusal to produce these documents was made in bad faith.

In this court's December 1, 2022, order, both of these questions were answered in the affirmative. This court was affirmed by the Law Court on August 22, 2023. Both this court and the Law Court concluded that the Risk Pool's response constituted a bad-faith refusal. In addition, both this court and the Law Court acknowledged that this was the first application of the Freedom of Access Act attorney fee provision. The results in this case, therefore, served not only to clarify and enforce the law for the parties themselves

1

but also to provide guidance to all people in Maine who might hold, or might seek, public records.

After reviewing the submissions of the parties, cited cases, and recent federal cases from the District of Maine, the court finds the following hourly rates are reasonable, given the qualifications, skill, and experience of the attorneys:

Zachary L. Heiden: $400

Carol Garvan: $350

Anahita Sotoohi: $220

Plaintiff seeks reimbursement for 317 hours of legal work, supported by detailed time records. The fact that this amount of time was required to resolve this matter is ridiculous. However, the blame for this rests squarely with the Defendant. Given the intransigence of the Defendant, and the public interest at stake, the number of hours expended was reasonable. The court also finds unpersuasive the quibbling advanced by the Defendant in opposition to the number of hours billed. In this court's view it is reasonable, considering the nature and tenure of this litigation, that the Plaintiff be reimbursed for the hours expended for the entire litigation and that more than one attorney may have participated in various aspects of this litigation.

Plaintiff seeks an additional and modest amount of $3,472.69 in litigation costs and expenses. The court funds that this amount is a reasonable, and compensable, amount.

Finally, the Plaintiff seeks a 1.2 lodestar enhancement, based on their exceptional success litigating a precedent-setting public interest case. Fee enhancements are the exception rather than the rule and there is limited precedent for such enhancements in Maine State courts. Given the public interest involved in this case; the time and hours consumed before resolution; the difficulty of the case; the significance of the result; the

quality of the attorneys' services; and the limited precedent for such an award, the court finds that a 1.15 lodestar enhancement in this case is appropriate.

Due to the lengthy billing records in this case, and the fact that certain time entries have already been reduced for time spent on clerical tasks, the court is unable to calculate the total amount due with any confidence. Therefore, the Plaintiff is ORDERED to submit a calculation of the amount to be awarded based on the findings of this order, with a proposed order, within 21-days of the date of this order.

DATED: December 19, 2023

Daniel I. Billings, Justice
Maine Superior Court

Entered on the Docket: 12/21/2023

3

HUMAN RIGHTS DEFENSE
CENTER,

       Plaintiff,

       v.

MAINE COUNTY COMMISSIONERS
ASSOCIATION SELF-FUNDED RISK
MANAGEMENT POOL,

       Defendant

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**DECISION AND ORDER**

## INTRODUCTION

The matter before the court is a final decision on Plaintiff Human Rights Defense Center's ("HRDC") Freedom of Access Act appeal of the refusal to release certain documents related to the settlement of a case against Kennebec County. The Maine County Commissioners Association Self-Funded Risk Pool ("Risk Pool") has denied the existence of any responsive documents. The court finds that the Risk Pool is in possession of responsive documents and wrongfully refused to release them. Further, the court finds that this refusal was made in bad faith and grants the HRDC's request for reasonable attorney's fees pursuant to 1 M.R.S. § 409(4).

## BACKGROUND

The court makes the following factual findings following the evidentiary hearing in this matter that was held on September 29, 2022.

This case arises out of a FOAA request initially made by the HRDC on June 18, 2021. This request, sent by Samantha Beauvais of the HRDC, sought "any documents showing payments disbursed to Jonathan Afandor and/or Attorney John Wall by Kennebec County, Nathan Willhoite and/or the Maine County Commissioners

1

Association Self-Funded Risk Management Pool from January 1, 2021 to present. This includes but is not limited to payment documentation relating to the following case: Afanador v. Kennebec County, Case No. 1:20-cv-00235-JDL." (Pl.'s Ex. 2.)

Malcom Ulmer, representative of the Risk Pool, replied to Ms. Beauvais's email request by stating that he believed that Attorney Peter Marchesi, counsel for Kennebec County, had already provided a copy of the Afanador release document to HRDC. Mr. Ulmer also stated that the settlement amount was $30,000. Mr. Ulmer did not provide any documents with his initial response. The release document, titled "GENERAL RELEASE AND AGREEMENT TO DEFEND, INDEMNIFY AND HOLD HARMLESS," does not state that the settlement amount was $30,000. All it says is that Afanador's case settled for "one dollar and other valuable consideration." (Pl.'s Ex. 7.) No other settlement agreement was produced.

Ms. Beauvais followed up with Mr. Ulmer, asking if the Risk Pool had "any documentation that shows the $30,000 amount." (Pl.'s Ex. 10.) In response, Mr. Ulmer provided a *Portland Press Herald* article quoting Mr. Ulmer as stating that the case settled for $30,000. Mr. Ulmer provided no other documentation. Mr. Ulmer did not indicate that he was in possession of responsive documents, nor did he assert any claims of privilege. Ms. Beauvais sent another email to Mr. Ulmer on June 21, 2021, where she asked Mr. Ulmer to provide "a copy of the actual agreement that shows $30,000." (Pl.'s Ex. 10.) Mr. Ulmer replied that the settlement agreement previously sent by Attorney Marchesi was "the actual agreement" and stated, "I have already advised you that the settlement amount is $30,000." (*Id.*) Mr. Ulmer did not produce any documentation showing that the Risk Pool had actually paid $30,000 to settle Mr. Afanador's case.

On July 2, 2021, Attorney Zachary Heiden with the Maine American Civil Liberties Union (ACLU) sent a letter to Attorney Marchesi and Mr. Ulmer. (Pl.'s Ex. 11.) Attorney

2

Heiden notified the Risk Pool that the ACLU was representing HRDC in relation to its FOAA request and reiterated the request for documents indicating the amount the Risk Pool actually paid to settle Mr. Afanador's case. (*Id.*) The letter states that HRDC would interpret a failure to reply as a final denial or refusal pursuant to the FOAA, 1 M.R.S. § 409(1). Attorney Marchesi and Mr. Ulmer both replied by email, on July 3 and July 6, respectively, that there were no more responsive documents. (Pl.'s Ex. 12-13.)

HRDC filed its complaint on July 27, 2021. The Risk Pool previously moved to dismiss the complaint on the grounds that HRDC had not originally filed a complaint against the Risk Pool and the amended complaint that added the Risk Pool as a party was untimely. By order dated April 28, 2022, the court rejected this argument, finding that the addition of the Risk Pool as a party related back to the date of the original complaint. The court set the matter for a hearing on September 29, 2022. At the hearing, the court heard testimony from Paul Wright, director of the HRDC, and Mr. Ulmer, representative of the Risk Pool. During this hearing, Mr. Ulmer testified that he was in possession of a claim file and financial records that contained documentation that showed the Risk Pool had paid $30,000 to settle Mr. Afanador's claim, but did not release those documents because he did not believe that HRDC had specifically requested them. Additionally, Mr. Ulmer claimed that he believed some of the documents might be privileged.[1]

## DISCUSSION

There are three issues before the court on this FOAA appeal. First, the Risk Pool has advanced a new timeliness argument after the court previously rejected the argument

---

[1] Mr. Ulmer never claimed any privileges during his email correspondence with the HRDC. The Risk Pool has not asserted that any of the documents in the claim file are privileged in this litigation. This is largely due to the fact that the Risk Pool did not acknowledge the existence of the claim file until the hearing, as its position has been that those documents are not responsive to the HRDC's request and therefore not relevant to this appeal.

on the motion to dismiss. Second, the court must determine whether the Risk Pool fully responded to the FOAA request. Third, if the Risk Pool did not fully respond to the request, the court must decide whether to grant HRDC's request for attorney's fees.

### 1. Timeliness

The Risk Pool argues that HRDC's FOAA appeal is not timely and must be dismissed. The Risk Pool's position is that HRDC's only FOAA request was served on June 18, 2021. The Risk Pool claims that its final response was made on June 21, 2021, when Mr. Ulmer's sent his final email to Ms. Beauvais. This contradicts the position that the Risk Pool took in its timeliness argument on the motion to dismiss, where it argued that Mr. Ulmer's email response to Attorney Heiden's letter on July 6, 2021, was the final response. Now the Risk Pool argues that Attorney Heiden's letter was not part of an ongoing dialogue related to the initial FOAA request, nor a new FOAA request, but a "follow-up" to the earlier FOAA that has no bearing on the appeal deadline.[2]

HRDC argues that the Risk Pool is barred from taking this position by the doctrine of judicial estoppel. Judicial estoppel is a doctrine that "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Lovell v. Lovell*, 2020 ME 139, ¶ 5, 243 A.3d 887 (quoting Alexander, Maine Appellate Practice § 402(b) at 312 (5th ed. 2018)). The doctrine typically applies when:

> (1) the position asserted in the subsequent legal action [is] clearly inconsistent with a previous position asserted;

---

[2] It is not clear how a "follow-up" letter is distinguishable from an ongoing dialogue about the FOAA request, which the Risk Pool implicitly acknowledges is permissible by identifying Mr. Ulmer's final message in a back-and-forth discussion with Ms. Beauvais as the final refusal. Regardless, because the Risk Pool is estopped from adopting this position, and because the court has already held that Attorney Heiden's letter was a second FOAA request, the court need not address this confusing framing of the dialogue between the Risk Pool and the HRDC.

4

(2) the party in the previous action [has] successfully convinced the court to accept the inconsistent position; and

(3) the party [has] gain[ed] an unfair advantage as a result of [his or her] change of position in the subsequent action.

*In re Child of Nicholas P.*, 2019 ME 152, ¶ 16, 218 A.3d 247 (quotation marks omitted). "[T]hese factors [are] neither inflexible prerequisites nor an exhaustive formula." *Me. Educ. Ass'n v. Me. Cmty. College Sys. Bd. of Trs.*, 2007 ME 70, ¶ 17, 923 A.2d 914 (citation omitted) (quotation marks omitted).

On the motion to dismiss, the Risk Pool framed the issue very differently. The Risk Pool argued, quite forcefully, that the July 6 email from Mr. Ulmer to Attorney Heiden was the final denial "to the second FOAA request." (Mot. Dismiss 2-3.) This "second FOAA request" was the letter Attorney Heiden sent to Mr. Ulmer and Attorney Marchesi, which the Risk Pool now expressly argues was *not* a FOAA request. This is why, in the Motion to Dismiss, the Risk Pool stated, in no uncertain terms, "[t]he deadline for Plaintiff to have filed a FOAA claim against the Risk Pool was August 5, which is 30 days after the Risk Pool's July 6 response to the second FOAA request." (*Id.* 2.) The Risk Pool's position here is clearly inconsistent with its prior arguments.[3]

The court adopted the Risk Pool's timeline for the appeal on the motion to dismiss as well. While the court ultimately held that HRDC's amended complaint related back to the initial filing date, the court accepted the Risk Pool's position that the final denial or refusal date was July 6, 2021, and the appeal deadline was August 5, 2021. 1 M.R.S. § 409(1) (person aggrieved by denial of FOAA request must appeal within 30 days).

---

[3] The Risk Pool characterizes its prior position as a mere "suggestion" that Attorney Heiden's letter was a second FOAA request. The Risk Pool did not suggest that the letter was a second FOAA request, it explicitly argued that it was. The Risk Pool did not indicate that it was taking this position *arguendo* or employ any conditional language. Further, this date was a key part of the Risk Pool's timeline, as it determined the deadline for appeal.

Finally, the Risk Pool would clearly gain an unfair advantage by allowing it to change its position now. No new information related to the timing or content of Attorney Heiden's letter came out in the hearing. The Risk Pool seeks to argue a new, inconsistent position that it plainly could have argued on its motion to dismiss. HRDC would be disadvantaged by this sudden change in position, as the parties have been litigating with the understanding that the timeliness issue was fully resolved on the Motion to Dismiss. The court sees no reason to grant the Risk Pool the unfair advantage of suddenly changing its timeline at this late stage of proceedings.

Even if the Risk Pool is not estopped from asserting this new position, the court has already held, at the Risk Pool's urging, that Attorney Heiden's letter was a second FOAA request. The Risk Pool's new approach does not give the court any reason to revisit this ruling. Attorney Heiden's letter is a clear request for documents, with a warning that a failure to reply or produce those documents will lead HRDC to seek recourse in the courts. Even if the content of the letter is duplicative of earlier email exchanges between HRDC, Kennebec County, and the Risk Pool, "a party seeking disclosure is free to request the information more than once." *Guy Gannett Pub. Co. v. Maine Dep't of Public Safety*, 555 A.2d 474, 476 (Me. 1989). The Risk Pool's belated argument that this letter should be completely disregarded is absurd[4].

## 2. Adequacy of the Response

The Risk Pool presumably reaches to invent a new timeliness argument because their argument on the merits is so weak. The Risk Pool argues that HRDC initially asked for "any" document showing the payment made to settle Afanador's case, not "every"

---

[4] Counsel is reminded of the requirements of Rule 11 of the Maine Rules of Civil Procedure. ("The signature of an attorney or party constitutes a representation by the signer that the signer has read the pleading or motion; that to the best of the signer's knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay.")

6

document. The Risk Pool argues that this request was satisfied by Mr. Ulmer sending a *Portland Press Herald* article that quotes Mr. Ulmer as saying the settlement amount was $30,000. The *Portland Press Herald* article was clearly not an adequate response to HRDC's request. For one thing, an article in a local newspaper is not even a government document. Second, the only thing the article confirms is that Mr. Ulmer, who had already told the HRDC that the settlement amount was $30,000, had also told a reporter that the settlement amount was $30,000.[5] The FOAA does not ensure a right to assurances from public officials that their interviews with the press are accurate, it ensures a right to public documents. Even if the court were to accept the Risk Pool's argument that the HRDC's request for "any" document showing the amount paid to Mr. Afanador meant only one document, the Risk Pool failed to provide even a single public record responsive to the request.

The Risk Pool's second argument is that HRDC never specifically requested cancelled checks or accounting records demonstrating the payment made to Mr. Afanador. The first request from Samantha Beauvais requested "[r]ecords sufficient to show . . . [t]he amount of money involved in the resolution and to whom it was paid." (Pl.'s Ex. 2.) When Attorney Marchesi responded and disclosed several documents, none of which contained the $30,000 figure in the *Portland Press Herald* article that prompted the request, the HRDC followed up with Attorney Marchesi and eventually Mr. Ulmer seeking "any documentation that shows the $30,000 amount." (Pl.'s Ex. 10.)

Mr. Heiden's letter, which the court has already held is the FOAA request actually under appeal, is even more explicit. Mr. Heiden noted that none of the documents produced up to that point showed that the county had actually paid $30,000 to settle Mr.

---

[5] This response was especially egregious, as HRDC had already referenced the *Portland Press Herald* article in question as the source for their belief that the settlement amount was $30,000.

Afanador's case. (Pl.'s Ex. 11.) Mr. Heiden stated his belief that settlement amounts are typically contained within settlement agreements that are executed in parallel with some form of a release. (*Id.*) Presumably to avoid confusion, Attorney Heiden clarified that responsive documents might also include accounting records. (*Id.*) Still, Mr. Ulmer insisted that he had no additional responsive documents. It is worth noting that the Risk Pool expressly argued in its post-hearing brief that HRDC never requested accounting records, even though Attorney Heiden's letter contains that exact phrase in its description of potentially responsive documents[6].

Mr. Ulmer testified during the hearing that he maintains a claim file on all settlements paid by the risk pool, including Mr. Afanador's, and that this file would contain accounting records which show the actual amount paid. However, according to his testimony, he believed that he did not have to disclose these records or assert a privilege to them, because he thought that HRDC was only seeking a settlement agreement. The court does not find his testimony credible. In light of the entire history of the communication between HRDC and the Risk Pool, it was very clear that HRDC was confused by the fact that the number on the settlement agreement did not match the number reported by the *Portland Press Herald*. Any reasonable person in Mr. Ulmer's position would have understood that HRDC was seeking additional public records confirming that Mr. Afanador was actually paid $30,000, and Mr. Ulmer knew he had these documents in his custody.

FOAA allows governmental entities served with a request to seek clarification as to the exact documents being requested. 1 M.R.S. § 408-A(3). The public policy behind this is obvious, FOAA requests may not always be precise, as the parties making them

---

[6] See Footnote 4 above.

may not know what documents the governmental entity they are communicating with actually has. By allowing the governmental entity to seek clarification, confusion can be minimized, and parties can refine their requests without immediately appealing to the Superior Court.

The Risk Pool used the clarification process here to obfuscate, not clarify. First, the Risk Pool denied having any documents showing that Mr. Afanador was paid $30,000, aside from a newspaper article. As the HRDC tried to explain why it was unsatisfied with the response, it clarified that it believed that there was likely a settlement agreement that would contain the $30,000 figure. The Risk Pool claims its refusal to disclose the responsive documents was justified because there was no *settlement agreement* which showed that Mr. Afanador was paid $30,000. The first request from Ms. Beauvais and the second request from Attorney Heiden were very clear that they were seeking any records that would verify that Mr. Afanador was paid $30,000, not just a settlement agreement. The Risk Pool, instead of forthrightly discussing what documents it did have to clarify the HRDC's request, apparently decided to engage in semantic gamesmanship to avoid disclosing that it even possessed responsive documents. This approach is a clear abuse of the FOAA process.

The court finds that the Risk Pool failed to adequately respond to the HRDC's FOAA request. The HRDC was obviously seeking documentation that showed that the Risk Pool paid $30,000 to settle Mr. Afanador's case, Mr. Ulmer knew that he had responsive documents, and he decided to prevaricate and obfuscate rather than disclose them.

### 3. Attorney's Fees

As a final matter, HRDC seeks attorney's fees based on the Risk Pool's bad faith in responding to the FOAA request. FOAA provides that a court may award reasonable

9

attorney's fees to a party that prevails on a FOAA appeal if the court determines that the refusal was committed in bad faith. 1 M.R.S. § 409(4). The Law Court has never ruled on what constitutes a bad faith FOAA refusal, and sources of authority for a standard of bad faith in this context are few and far between.

The HRDC cites the statutory definition of "good faith" under 10 M.R.S. § 1242(11), a commercial trade statute, which states, "[g]ood faith means honesty in fact and the observation of reasonable commercial standards of fair dealing in the trade." The First Circuit has said that bad faith may occur when one of these elements is missing. *Schott Motorcylce Supply v. Am. Honda Motor Co.*, 976 F.2d 58, 63 (1st Cir. 1992). Bringing a lawsuit with absolutely no basis may also result in a finding of bad faith. *Cimenian v. Lumb*, 2008 ME 107, ¶ 13, 951 A.2d 817. When a criminal defendant claims that police unconstitutionally destroyed evidence, bad faith "is a fact-specific inquiry focusing on the reasons behind the action or inaction leading to the claimed due process violation . . . [and] requires more than negligence." *State v. Chan*, 2020 ME 91, ¶ 20, 236 A.3d 471.

Even without a clear standard for bad faith, it is clear that taking baseless positions or otherwise abusing legal processes is bad faith under most circumstances. Here, Mr. Ulmer admitted that he had responsive documents that would show the $30,000 settlement amount. Instead of asserting privilege or producing the documents, Mr. Ulmer denied their existence. In light of the communication between HRDC and Mr. Ulmer, there is no way Mr. Ulmer could have rationally believed that HRDC was requesting only a settlement agreement, and was not requesting documentation of the actual amount paid to Mr. Afanador if it was not contained within a settlement agreement. Nor could Mr. Ulmer have rationally believed that sending the *Portland Press Herald* article that prompted the initial request was a meaningful response to HRDC's request. Instead, Mr. Ulmer abused the FOAA clarification process to invent a pretext to

10

justify his refusal to disclose responsive documents, never even admitting that he had those documents.

To make matters worse, the Risk Pool has adopted absurd, blatantly untrue, and inconsistent legal positions in this litigation to avoid a ruling on the merits. Even in its post-hearing brief, the Risk Pool asserts that the HRDC never requested accounting records, even though Attorney Heiden's letter uses that *exact* phrase to describe responsive documents. At every stage of the FOAA process, the Risk Pool and Mr. Ulmer adopted bizarre interpretations of HRDC's request to avoid disclosure, despite knowing from the beginning that they were in possession of responsive documents. This type of obfuscation and prevarication undermines the basic purpose of the FOAA, which is to enable the public to be informed about what their government is up to. *Blethen Me. Newspapers, Inc. v. State*, 2005 ME 56, ¶ 29, 871 A.2d 523 (quoting *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)).

The court grants HRDC's request for attorney's fees. While the court was unable to find another example of attorney's fees being granted in the FOAA context, the Risk Pool's behavior was so deceptive and abusive of the FOAA process that it is warranted in this case.

It is hereby ORDERED:

Defendant Maine County Commissioners Association Self-Funded Risk Pool shall disclose all responsive documents showing that it paid $30,000 to settle the case of Afanador v. Kennebec County, Case No. 1:20-cv-00235-JDL, pursuant to 1 M.R.S. § 409(1).

Further, Plaintiff Human Rights Defense Center's request for reasonable attorney's fees is GRANTED. Plaintiff Human Rights Defense Center will have 21 days from the entry of this order to submit affidavits or other documentation sufficient for the court to determine a reasonable attorney's fee award.

11

DATED:  December 1, 2022

_____
Daniel I. Billings, Justice
Maine Superior Court

12